# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-30510

United States Court of Appeals
Fifth Circuit

**FILED**

December 30, 2014

Lyle W. Cayce
Clerk

In re: ROLLS ROYCE CORPORATION,

Petitioner

Petition for a Writ of Mandamus to the
United States District Court for the
Western District of Louisiana

Before HIGGINBOTHAM, JONES, and PRADO, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

This mandamus petition brings the question of who – the parties or the court – determines in which judicial district a civil action is to proceed. In *Atlantic Marine Construction Company*,[1] the Supreme Court held that when all parties have entered into a forum selection contract, that contract controls, except in exceptional circumstances, and the district court must transfer the action to the agreed-upon district.[2] Here, we must address a related issue – what should a district court do when some, but not all, litigants are subject to a forum selection clause, and one of the parties to the clause files a motion to sever and transfer its claims to the forum chosen in the contract.

Faced with this situation, the district court refused to sever and transfer the party claiming the benefit of the forum selection clause. We respectfully

---

[1] *Atl. Marine Const. Co., Inc.* v. *U.S. Dist. Ct. W.D. Tex.*, 134 S. Ct. 568 (2013).

[2] *See id.* at 582.

No. 14-30510

disagree, persuaded that on these facts the forum selection contract must be enforced and GRANT the petition for mandamus.

I.

The underlying litigation concerns the liability stemming from a helicopter crash in the Gulf of Mexico. A Bell 407 helicopter owned by Petroleum Helicopters, Inc. ("PHI") allegedly suffered a failure of its number two engine bearing, forcing the pilot to make an emergency landing in the Gulf. During the landing, the pilot inflated the helicopter's skid-mounted emergency pontoon floats, which were designed to keep the helicopter from sinking. While the pontoon bags worked long enough to allow a safe evacuation of passengers and crew, one of the pontoons eventually failed, and the helicopter flipped, rendering the aircraft a total loss.

PHI brought suit in Louisiana state court against three parties: (1) Rolls Royce Corporation ("Rolls Royce"), which designed and manufactured the engine bearing, (2) Apical Industries, Inc. ("Apical"), which designed, manufactured, and sold the pontoon flotation system, and (3) Offshore Helicopter Support Services, Inc. ("OHS"), which repaired and reworked the float system before the crash. The defendants timely removed on the basis of diversity jurisdiction.

Once in federal court, Rolls Royce moved to sever PHI's claims against the company, and to transfer those claims to the Southern District of Indiana.[3]

---

[3] The motion to sever was filed pursuant to Federal Rule of Civil Procedure ("Rule") 21 and the motion to transfer was filed pursuant to 28 U.S.C. § 1404(a).

These motions were the second set of motions filed in this case. Rolls Royce had originally filed a motion to dismiss under Rule 12(b)(3) or, in the alternative, to transfer pursuant to 28 U.S.C. § 1404 or § 1406. The district court denied this motion without prejudice, pending the Supreme Court's release of its decision in *Atlantic Marine*, which resolved a circuit split about whether a transfer motion pursuant to a forum selection clause ought be brought pursuant to section 1404, section 1406, or Rule 12(b)(3). After *Atlantic Marine* ruled that section 1404 was the proper vehicle, 134 S. Ct. at 580, Rolls Royce renewed its motion – and that motion is the one at issue in this case.

No. 14-30510

It relied on a forum selection clause in a warranty to which the engine bearing was subject, which stated, in relevant part:

> Any controversy or claim arising out of or relating to this Limited Warranty or breach thereof shall be litigated only in the Circuit or Superior Courts of Marion County, Indiana or of the United States District Court for the Southern District of Indiana, Indianapolis Division. In connection with the foregoing, the Purchaser consents to the jurisdiction and venue of such courts and expressly waives any claims or defenses of lack of jurisdiction or proper venue by such courts.

Apical and OHS, neither of whom were subject to a forum selection clause, opposed the severance and transfer, as did PHI.

The district court denied the motion.[4] First, it determined that the entire action could not be transferred to Indiana.[5] Second, the court turned to the issue of whether severance under Federal Rule of Civil Procedure ("Rule") 21 was warranted. The court articulated five factors that district courts had used in analyzing a severance motion, and concluded that each weighed against

---

[4] The district court originally referred this motion to a magistrate judge, who recommended denying transfer. *PHI, Inc.* v. *Apical Indus.,* No. 13-CV-00015, 2014 WL 1820717 (W.D. La. Mar. 7, 2014). The district court adopted the magistrate judge's report, with only minor clarifications. *Petroleum Helicopters, Inc.* v. *Apical Indus., Inc.*, No. 13-CV-0015, 2014 WL 1820859 (W.D. La. May 6, 2014). We refer to both decisions together as "the district court."

[5] *See PHI*, 2014 WL 182, at *2-4. The court could not transfer the case pursuant to 28 U.S.C. § 1404(a) because that section allows transfer only to a district in which the action could have been brought, or where all parties consent. The court assumed that the Indiana district court would lack personal jurisdiction over OHS, and so the action could not have been originally brought in that district. *See Hoffman* v. *Blaski*, 363 U.S. 335, 343-44 (1960). Furthermore, only Rolls Royce consented to transfer. *PHI*, 2014 WL 1820717, at *4.

Nor could the court transfer the case pursuant to 28 U.S.C. § 1406(a), since that statute allows transfer only when the action was brought "in the wrong division or district," 28 U.S.C. § 1406(a), and here, the Western District of Louisiana was the proper district. *PHI*, 2014 WL 1820717, at *4.

3

No. 14-30510

severance.[6] As a result, there was no basis for a transfer.[7] Finally, the district court considered whether the Supreme Court's decision in *Atlantic Marine* mandated transfer. It held that it did not. The district court determined that key difference between this case and *Atlantic Marine* was that not all parties to the litigation had signed a forum selection contract. Reading *Atlantic Marine* to mandate severance and transfer of the party to the contract, the district court reasoned, "would not further the Supreme Court's stated goal in *Atlantic Marine* of not disrupting the expectations of parties who bargained for litigation in a particular forum but would, instead, potentially inconvenience and prejudice parties having absolutely no relationship to a forum-selection clause they had no part in conferring."[8]

Following the denial of its severance-and-transfer motion, Rolls Royce petitioned this court for mandamus relief.[9]

## II.

A writ of mandamus is an "extraordinary remedy,"[10] and may only issue if three criteria are met:

> First, the party seeking issuance of the writ [must] have no other adequate means to attain the relief he desires, a condition designed to ensure that the writ will not be used as a substitute for the regular appeals process. Second, the petitioner must satisfy the burden of showing that [his] right to issuance of the writ is clear and indisputable. Third, even if the first two prerequisites have been met, the issuing court, in the exercise of its discretion,

---

[6] *PHI*, 2014 WL 1820717, at *5 ("Numerous district courts in the Fifth Circuit have held that the following factors should be considered when deciding whether a claim should be severed under Rule 21: (1) whether the claims arose out of the same transaction or occurrence, (2) whether the claims present common questions of law or fact, (3) whether settlement or judicial economy would be promoted, (4) whether prejudice would be averted by severance, and (5) whether different witnesses and documentary proof are required.").

[7] *See id.* at *7.

[8] *Id.* at *10.

[9] It did not seek certification for an interlocutory appeal under 28 U.S.C. § 1292(b).

[10] *Will* v. *United States*, 389 U.S. 90, 95 (1967).

No. 14-30510

must be satisfied that the writ is appropriate under the circumstances.[11]

"These hurdles, however demanding, are not insuperable."[12] We consider each in turn.

A.

First, Rolls Royce must show that mandamus is its exclusive vehicle to seek relief. It does. Our court, in accord with our sister circuits, has held "mandamus is an appropriate means of testing a district court's [section] 1404(a) ruling."[13] Other means for review are unavailable. Rolls Royce cannot appeal an adverse final judgment under 28 U.S.C. § 1391, because it "would not been able to show that it would have won the case," had the action been litigated in its desired forum.[14] While the Supreme Court has crafted a narrow exception to the final order doctrine, termed the "collateral order doctrine" or "*Cohen* exception,"[15] we have previously held that transfer orders do not fall within the scope of this doctrine.[16] Nor can Rolls Royce bring an interlocutory appeal under 28 U.S.C. § 1292(b), as our circuit precedent forecloses reviews of transfer orders under that statute.[17] Apical and OHS argue otherwise, saying that certification is available, because the district court's order contained a

---

[11] *Cheney* v. *U.S. Dist. Ct. for Dist. of Columbia*, 542 U.S. 367, 380-81 (2004) (alterations in original) (citations and internal quotation marks omitted).

[12] *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 311 (5th Cir. 2008) (en banc) (quoting *Cheney*, 542 U.S. at 381).

[13] *Id.* at 309.

[14] *Id.* at 319 (quoting *In re Nat'l Presto Indus, Inc.*, 347 F.3d 662, 663 (7th Cir. 2003)).

[15] *Cohen* v. *Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949). "To fall within *Cohen*'s collateral order doctrine, an 'order must (1) conclusively determine the disputed question, (2) resolve an important issue completely separate from the merits of the action, and (3) be effectively unreviewable on appeal from a final judgment." *Henry* v. *Lake Charles Am. Press, L.L.C.*, 566 F.3d 164, 171 (5th Cir. 2009) (quoting *Coopers & Lybrand* v. *Livesay*, 437 U.S. 463, 468 (1978)).

[16] *See Brinar* v. *Williamson*, 245 F.3d 515, 517 (5th Cir. 2001).

[17] *See Volkswagen.* 545 F.3d at 319 (citing *Garner* v. *Wolfinbarger*, 433 F.2d 117, 120 (5th Cir. 1970)).

5

cognizable "controlling question of law."[18]  We have, though, squarely rejected this conclusion, holding that "[t]he Congressional policy against piecemeal appeals, as expressed in the final judgment rule, to which [section] 1292(b) is a narrow exception, is eroded by permitting review of exercise of the judge's discretion under [section] 1404(a) as a 'controlling question of law.'"[19]

There is one complication - the district court did not rule on a transfer motion, but a joint transfer and severance motion.  While we have previously held that the denial of a standalone Rule 21 severance motion can be challenged through an appeal of a final judgment,[20] we believe that the combination of transfer and severance inquiries dictates a different response. As the Federal Circuit, addressing whether mandamus was available to review the denial of a transfer and severance motion, concluded:

> With regard to the 'no other means' requirement, there is no meaningful distinction between a petitioner's seeking review of an order denying transfer because the district court clearly abused its discretion in applying the [section] 1404(a) factors and a petitioner's seeking review of an order denying a motion to transfer because the district court clearly abused its discretion by not severing the claims as a predicate to determining whether to transfer.  In either case, a defendant would not have an adequate remedy for an improper failure to transfer or sever . . . .[21]

We agree.  Because the transfer order is unreviewable except through mandamus, and because the severance inquiry is, as will be discussed later, inextricably linked to the transfer analysis, we conclude that there are no other means for review of the district court's order but through mandamus.

---

[18] 28 U.S.C. § 1292(b).

[19] *Garner,* 433 F.2d at 120 (citing 28 U.S.C. § 1292(b)).  Our court, sitting en banc, reaffirmed this conclusion in *Volkswagen.* 545 F.3d at 319.

[20] *See United States* v. *O'Neill*, 709 F.2d 361, 371-72 (5th Cir. 1983); *see also Amie* v. *City of Jennings*, 217 F. App'x 338, 338-39 (5th Cir. 2007) (unpublished).  These decisions do not discuss the potential of mandamus review under such circumstances.

[21] *In re EMC Corp.*, 677 F.3d 1351, 1354-55 (Fed. Cir. 2012)

No. 14-30510

B.

We turn now to whether Rolls Royce's right to mandamus relief is "clear and indisputable."[22] We look to whether there has been a "clear abuse of discretion," which, under our circuit precedent, includes situations where the district court "relies on erroneous conclusions of law" which "produce a patently erroneous result."[23]

We conclude that, in this instance, the district court erred in refusing to transfer Rolls Royce in accordance with its forum selection clause and in light of the Supreme Court's decision in *Atlantic Marine*. This said, we do not read *Atlantic Marine* to mandate severance and transfer of a party bearing a forum selection clause in all multiparty cases, regardless of countervailing considerations of judicial economy.

1.

By the light of *Atlantic Marine*,[24] we analyze a transfer motion brought by a party seeking to enforce a forum-selection cause pursuant to 28 U.S.C. § 1404.[25] Section 1404, in turn, provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."[26]

We begin with the purpose of section 1404, by which Congress granted to the federal district court the power to allocate cases and controversies among federal district courts. The Supreme Court made plain that this grant of authority was intended to afford a powerful tool to bring forth efficient judicial case management among the various federal courts. The statute "should be

---

[22] *Volkswagen*, 545 F.3d at 311.
[23] *Id.* at 310.
[24] *Atl. Marine Const. Co., Inc.* v. *U.S. Dist. Ct. W.D. Tex.*, 134 S. Ct. 568 (2013).
[25] *Id.* at 579-80.
[26] 28 U.S.C. § 1404(a).

regarded as a federal judicial housekeeping measure, dealing with the placement of litigation in the federal courts and generally intended, on the basis of convenience and fairness, simply to authorize a change of courtrooms."[27]  These factors, in turn, are measured across two dimensions: the interests of the litigants, and the interests of the public and judicial system writ large.[28]

Animating the former are considerations governing the cost and ease of litigation.[29]  Animating the latter are a broader set of concerns, ranging from the interest in having a case involving local disputes and local law resolved by a local court,[30] to facilitating judicial economy and avoiding duplicitous litigation.[31]    This inquiry necessarily requires the district court to "balance a number of case-specific factors," and the Supreme Court has

---

[27] *Van Dusen* v. *Barrack*, 376 U.S. 612, 636-37 (1964).

[28] *See Atl. Marine*, 134 S. Ct. at 581; *see also* Wright & Miller, Fed. Prac. & Proc. § 3854 (4th ed. 2014) ("[I]t has long been clear that the interest of justice is a factor (albeit an amorphous and somewhat subjective one) to be considered on its own and that is very important.").

[29] *See, e.g.*, *Atl. Marine*, 134 S. Ct. at 581 n.6 ("Factors relating to the parties' private interests include 'relative cost of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing witnesses . . . and all other practical problems that make trial of a case easy, expeditious and inexpensive.") (quoting *Piper Aircraft Co.* v. *Reyno*, 454 U.S. 235, 241 n.6 (1981)).

[30] *See id.* ("Public-interest factors may include 'the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law.") (quoting *Piper Aircraft*, 454 U.S. at 241 n.6) (brackets in original).

The *Atlantic Marine* court was careful to note that these factors are illustrative, not exhaustive.  We have held the same.  *See In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc) (holding that the *Piper Aircraft* factors "are not necessarily exhaustive or exclusive"); *Action Indus. Inc.* v. *U.S. Fid. & Guar. Co.*, 384 F.3d 337, 340 (5th Cir. 2004) (holding that no single *Piper Aircraft* factor "can be said to be of dispositive weight").

[31] *See, e.g.*, *Cont'l Grain Co.* v. *The FBL-585*, 364 U.S. 19, 26 (1960) ("To permit a situation in which two cases involving precisely the same issues are simultaneous pending in different District Courts leads to the wastefulness of time, energy and money that [section] 1404 was designed to prevent."); *In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009) (highlighting the importance of judicial economy when determining a section 1404 transfer).

cautioned that a section 1404 transfer inquiry requires an "individualized, case-by-case consideration of convenience and fairness."[32]

When the parties hold a valid forum selection clause, *Atlantic Marine* alters the normal section 1404 analysis. As is most relevant here, the district court cannot independently weight the parties' private interests, but must deem such interests to weigh in favor of the preselected forum, the parties having struck that balance by their selection contract.[33] Accordingly, only the public-interests may weigh against transfer, and "[b]ecause those factors will rarely defeat a transfer motion, the practical result is that the forum-selection clauses should control except in unusual cases."[34]

2.

For cases where all parties signed a forum selection contract, the analysis is easy: except in a truly exceptional case, the contract controls. But not so where, as here, not all parties to the lawsuit have entered into a forum selection agreement. The petitioner urges, as does our colleague in concurrence, that the analysis – and the result – follow pari passu with *Atlantic Marine*. With respect, we believe the answer is more complicated.

a.

In terms of the party who signed the agreement, *Atlantic Marine* is clear – the court cannot consider private-interest factors that counsel against

---

[32] *Stewart Org.* v. *Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting, second, *Van Dusen* v. *Barrack*, 376 U.S. 612, 622 (1964)).

[33] *See Atl. Marine*, 134 S. Ct. at 582 ("When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation. A court accordingly must deem the private-interest factors to weigh entirely in favor of the preselected forum.").

[34] *Id.* The Court held that the presence of a forum-selection clause wrought two additional changes to the section 1404 analysis: first, that "the plaintiff's choice of forum merits no weight," and, second, that "when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a [section] 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules – a factor that in some circumstances may affect public-interest considerations." *Id.* at 581-82.

transfer to the agreed-upon forum. But the analysis differs when there are parties who have not entered into any forum-selection contract. First, *Atlantic Marine* was premised on the fact that the parties had agreed in advance where their private litigation interests lie, and the reviewing court had no cause to disturb those expectations.[35] A litigant not party to such a contract did not, of course, make any such advance agreements and *their* private interests must still be considered by the district court.[36] As such, the section 1404 analysis, modified by *Atlantic Marine*, might point in the direction of one judicial district for the forum-selection clause parties, and in another direction for the parties without a preexisting agreement.

A properly conducted section 1404 inquiry may well require a district court to send different parties to pursue the same suit in different districts, implicating concerns attending parallel lawsuits not present in *Atlantic Marine*. While *Atlantic Marine* noted that public factors, standing alone, were unlikely to defeat a transfer motion,[37] the Supreme Court has also noted that section 1404 was designed to minimize the waste of judicial resources of parallel litigation of a dispute.[38] The tension between these centrifugal

---

[35] *See id.* at 582 ("When the parties agree to a forum-selection clause, they waive the right to challenge the pre-selected forum . . . .").

[36] *Atlantic Marine* is premised on the idea that a forum selection clause is a contract between two parties, and that that contract must be honored. *See, e.g.*, *id.* at 581-82 (concluding that "the *plaintiff's* choice of forum merits no weight," and that the private interests are not relevant because "[w]hen *parties agree* to a forum selection clause, they waive the right to challenge the *preselected forum*") (emphasis added). The Court is silent with respect to situations where, as here, there are third-party externalities at play – specifically the presence of objecting defendants who have not signed any forum selection agreement.

[37] *Id.* at 582.

[38] *See Cont'l Grain Co.* v. *The FBL-585*, 34 U.S. 19, 26 (1960); *see also U.S.O.* v. *Mizuho Holding Co.*, 547 F.3d 749, 750 (7th Cir. 2008) (holding, in the *forum non conveniens* context, that parallel litigation concerns justified dismissing a case filed in a domestic court, as "[t]here is no reason for identical suits to be proceeding in different courts"); *Coady* v. *Ashcraft & Gerel*, 223 F.3d 1, 10-11 (1st Cir. 2000) (concluding that the goal of avoiding parallel litigation justified transferring all cases to a single judicial district).

considerations suggests that the need – rooted in the valued public interest in judicial economy – to pursue the same claims in a single action in a single court can trump a forum-selection clause.

b.

There is more. To transfer the claims of the forum-clause defendant, the district court would first have to sever those claims from the claims of the non-forum clause defendants, which remain in the original district. The petitioner's answer is that *Atlantic Marine* vitiates the traditional severance analysis in multiparty cases. This is not so clear.

A district court has wide discretion to sever a claim against a party into separate cases,[39] in vindication of public and private factors.[40] Though we have not squarely addressed the issue, our jurisprudence suggests that the severance inquiry is different – and more focused on judicial efficiency – when it is combined with a section 1404 motion to transfer than when the severed case would remain in the original judicial district. In *Liaw Su Teng* v. *Skaarup Shipping Corporation*,[41] addressing the situation where a court could transfer

---

[39] *See Applewhite* v. *Reichold Chems., Inc.*, 67 F.3d 571, 574 (5th Cir. 1995); *Burnet* v. *United Gas Pipeline Co.*, 15 F.3d 500, 505 (5th Cir. 1994).

[40] While our circuit has not formally adopted a severance test, our district courts have settled on a standard which accords with that used in other circuits. *See, e.g.*, *Paragon Office Servs., LLC* v. *UnitedHealthcare Ins. Co., Inc.*, No. 3:11-CV-2205-D, 2012 WL 4442368, at *1 (N.D. Tex. Sept. 26, 2012) (defining Rule 21 factors as "(1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for the separate claims.") (quoting *Morris* v. *Northrop Grumman Corp.*, 37 F. Supp. 2d. 55, 580 (S.D.N.Y. 1999)); *see also* Wright & Miller, Fed. Prac & Proc. § 1689 (3d ed. 2004) ("Even when venue is proper to all defendants, the court may sever a claim against a party and transfer it to a more convenient forum or sever an unrelated claim and give it separate treatment when doing so would be in the interest of some or all of the parties. On the other hand, severance will be refused if the court believes that it only will result in delay, inconvenience, or added expense.").

[41] 743 F.2d 1140 (5th Cir. 1984), *overruled on other grounds*, *In re Air Crash Disaster Near New Orleans, La. on July 9, 1982*, 821 F.2d 1147 (5th Cir. 1987).

some but not all parties,[42] we suggested that when considering a severance-and-transfer motion, the inquiry collapsed into an inquiry into the relative merits of convenience versus judicial economy. We held that when addressing a severance-and-transfer request:

> [T]he court must weigh carefully whether the inconvenience of splitting the suit outweighs the advantages to be gained from the partial transfer. It should not sever if the defendant over whom jurisdiction is retained is so involved in the controversy to be transferred that partial transfer would require the same issue to be litigated in two cases. That being the situation here, the district court should not have severed the claims if there were any alternative. Manifestly, the plaintiffs will suffer some inconvenience if they are forced to litigate their claims in two courts, half the world apart from each other, with not only the consequent added expense and inconvenience but also the possible detriment of inconsistent results. A single forum is also most suitable for determining possible counter- and cross-claims. The public also has an interest in facilitating a speedy and less-expensive determination in one forum of all of the issues arising out of one episode.[43]

Several of our sister circuits have also collapsed the severance-and-transfer analysis into a single inquiry into judicial economy. In *White* v. *ABVO Engineering Corporation*,[44] the Third Circuit held that a severance motion is distinct from, and precedes, a transfer motion, but that "[b]efore effecting such a severance, a judge should weigh the convenience to the parties requesting transfer against the potential inefficiency of litigating the same facts in two

---

[42] At the time, as per *Hoffman* v. *Blaski*, 363 U.S. 335, 343-44 (1960), a court could transfer an action only to a judicial district in which the court could have properly exercised personal jurisdiction and venue over the defendant. Under the current version of section 1404, a federal district court may now transfer a case to any "district or division to which all parties have consented." 28 U.S.C. § 1404(a).

[43] *Liaw Su Teng*, 743 F.2d at 1148-49.

[44] 199 F.3d 140 (3d Cir. 1999).

separate forums."[45]   The court did note that the analytical question was essentially whether "the interests of judicial economy dictated . . . a severance and transfer."[46]   The Second Circuit has similarly held that "where the administration of justice would be materially advanced by severance and transfer, a district court may properly sever the claims against one or more defendants for the purpose of permitting the transfer of the action against the other defendants."[47]   While judicial economy is not the sole consideration for a district court facing a severance-and-transfer motion, it retains a cardinal role.

It is true that *Atlantic Marine* does not speak directly to the issue of severance.   Yet, its principal conclusion that a reviewing court cannot consider the private interests of a party who entered into a forum selection clause remains relevant to a severance-and-transfer inquiry.[48]   We are persuaded that the severance-and-transfer inquiry in situations where some but not all parties have entered into a forum selection clause ought go as follows:  First, pursuant to *Atlantic Marine*, the private factors of the parties who have signed a forum agreement must, as matter of law, cut in favor of severance and transfer to the contracted for forum.   Second, the district court must consider the private factors of the parties who have *not* signed a forum selection agreement as it would under a Rule 21 severance and section 1404 transfer analysis.   Finally, it must ask whether this preliminary weighing is outweighed by the judicial economy considerations of having all claims determined in a single lawsuit.   In so determining, the district court should consider whether there are procedural mechanisms that can reduce the costs of severance, such as common pre-trial procedures, video depositions,

---

[45] *Id.* at 144.

[46] *Id.* at 145.

[47] *Wyndham Assoc.* v. *Bintliff*, 398 F.2d 614, 618 (2d. Cir. 1968).

[48] *Atl. Marine Const. Co.*, 134 S. Ct. at 582.

stipulations, etc. Such practices could echo those used by judges in cases managed pursuant to multidistrict litigation statutes.[49]

This is necessarily a fact-sensitive analysis, and while we agree that *Atlantic Marine* informs the analysis, we cannot conclude that it categorically requires severance-and-transfer in all situations. By failing to properly consider the impact of *Atlantic Marine* in considering the severance and transfer motion, we conclude that the district court erred in its construction of law, and thus mandamus is appropriate.[50]

c.

We recognize that that a large percentage of the federal judiciary's business is conducted through the use of the multidistrict litigation process.[51] Strictly speaking, *Atlantic Marine* does not implicate transfer decisions by the Panel on Multidistrict Litigation. Those decisions are made pursuant to 28 U.S.C. § 1407, while *Atlantic Marine*, by its terms, only speaks to transfer motions brought under section 1404(a).[52] Nonetheless, because Congress set similar considerations to guide treatment of transfer motions in both contexts,[53] we believe that *Atlantic Marine*'s reasoning informs MDL practice.

Whether a case is to be transferred to an MDL docket is not our decision to make.[54] We note, however, that judicial economy is of significant concern to

---

[49] *See, e.g.*, Sean J. Griffith & Alexandra D. Lahav, *The Market for Preclusion in Merger Litigation*, 66 Vand. L. Rev. 1053, 1134 (2013).

[50] *See In re Volkswagen of Am., Inc.*, 545 F.3d 304, 310 n.4 (5th Cir. 2008) (en banc).

[51] *See* U.S. Judicial Panel on Multidistrict Litigation: Pending MDLS, http://www.jpml.uscourts.gov/pending-mdls-0 (reporting that, as of December 15, 2014, 127,105 pending district court cases have been consolidated into 289 MDL dockets).

[52] *See Atl. Marine Const. Co.*, 134 S. Ct. at 579.

[53] *Compare* 28 U.S.C. § 1404(a) (a district court may transfer a case "[f]or the convenience of parties and witnesses, in the interest of justice"), *with* 28 U.S.C. § 1407(a) (the multidistrict panel may transfer cases "for the convenience of parties and witnesses and [if it] will promote the just and efficient conduct of such actions").

[54] *See* 28 U.S.C. § 1407(a) (judicial panel on multidistrict litigation is responsible for transferring cases to a consolidated multidistrict panel).

No. 14-30510

a MDL transfer decision and often parallels private interests – more so than for the mine-run transfer – and so while *Atlantic Marine* may counsel against such consolidation in a marginal case, its independent force is much dissipated in the world of MDL.

d.

Our concurring colleague posits that we have misconstrued *Atlantic Marine*. We must respectfully disagree. In our view, as we said earlier, the Supreme Court's central teaching in *Atlantic Marine* is that when parties contractually agree on a choice of forum clause, that agreement dictates the result of any "private factor" inquiry under a transfer, or as here, severance motion. At the same time, the Supreme Court made plain that public interest factors are to be considered when present. In day-to-day operation the public interest factors will seldom impede enforcement. *Atlantic Marine* signifies that of the universe of federal multiple-party, multiple-district civil cases, few will be affected by this decision. A significant percentage of multi-party cases, representing about 40 percent of the federal civil case load, are managed through MDL dockets.[55]  These cases are to be transferred back to their original forum for trial; a right only reinforced by the presence of a contracted-

---

[55] A word about how we calculated this statistic. According to the Judicial Panel on Multidistrict Litigation, as of September 30, 2014, there were 127,704 civil actions currently pending and assigned to an MDL docket. *See* U.S. Judicial Panel on Multidistrict Litigation, Statistical Analysis of Multidistrict Litigation, Fiscal Year, 2014, http://www.jpml.uscourts.gov/sites/jpml/files/JPML_Statistical_Analysis_of_Multidistrict_Litigation-2014_0.pdf. As per the Administrative Office of the U.S. Courts, as of June 30, 2014, the last time period for which data was available, there were 334,141 civil cases pending in the federal district courts, of which 287,801 were private civil actions. *See* Table C-1, Statistical Tables for the Federal Judiciary, http://www.uscourts.gov/uscourts/Statistics/StatisticalTablesForTheFederalJudiciary/2014/june/C01Jun14.pdf. Assuming that the pending MDL case load was similar in June 2014 and September 2014, MDL cases would represent approximately 38% of all civil cases and 44% of all private civil cases.

for forum.[56] The choice of law implicit in that contract would also be assured.[57] The multi-party cases not in need of MDL management by definition present a much weaker call upon the public interest. And, as here, careful pre-trial management will allow the district courts to sever and transfer the contracting litigant while minimizing prejudice to the remaining parties. Nor do we suggest that merely joining a party to the suit will defeat a severance motion pursuant to a valid forum contract – certainly not when joined in a transparent effort to defeat the transfer. Our district judges are best situated to balance the competing interests and prudently exercise their judgment in determining how the business of the federal courts is to be allocated, giving the contracted-for choice of forum its due. Such management is indeed their hallmark.

## C.

Here, the district court erred in not considering Rolls Royce's forum-selection clause when conducting its severance-and-transfer analysis.[58] Moreover, there is no evidence in the record indicating special administrative difficulties with severance, or that the interests of the defendants not privy to the clause would be significantly threatened. It remains that such interests can be secured by the hand of an experienced federal trial judge with such devices as common discovery among separated cases and sequencing of any dispositive motions or trials. As we recognized in *Volkswagen* "writs of

---

[56] *See* 28 U.S.C. § 1407(a) ("Each action so transferred shall be remanded by the panel at or before the conclusion of such pretrial proceedings to the district from which it was transferred . . . .").

[57] *See In re Air Disaster at Ramstein Air Base, Germany, on 8/29/90*, 81 F.3d 570, 576 (5th Cir. 1996) ("When a transferee court presides over several diversity actions consolidated under the multidistrict rules, the choice of law rules of each jurisdiction in which the transferred actions were originally filed must be applied.").

[58] *See Phi, Inc.* v. *Apical Indus., Inc.*, No. 6:13-CV-00015, 2014 WL 1820717, at *5-6 (W.D. La. Mar. 7, 2014).

No. 14-30510

mandamus are supervisory in nature and are particularly appropriate when the issues also have an importance beyond the immediate case."[59]

### III.

The mandamus petition is GRANTED. The judgment of the district court is REVERSED and this case is REMANDED with instructions to sever and transfer the claims against Rolls Royce.

---

[59] *Volkswagen*, 545 F.3d at 319 ("Because venue transfer decisions are rarely reviewed, the district courts have developed their own tests, and they have applied these tests with too little regard for consistency of outcomes.").

No. 14-30510

JONES, Circuit Judge, specially concurring:

Although I agree that mandamus was warranted in this matter, I respectfully cannot subscribe to the majority's limiting the scope of *Atlantic Marine* to two-party disputes (or, as the majority somewhat misleadingly puts it, disputes where "all parties" have signed a contract with a forum selection clause). *Atlantic Marine Construction Co., Inc. v. U.S. Dist. Court,* ___ U.S. ___, 134 S. Ct. 568 (2013). This the majority accomplishes by holding, in a case where one of three defendants has had a longstanding forum selection agreement with the plaintiff, that the defendant's motion to seek severance (Fed. R. Civ. P. 21) reintegrates "private interest" factors into a district court's decision whether to enforce the clause. *Atlantic Marine* cannot be so cabined, in my view or in the view of numerous other courts whose decisions are not even cited by the majority opinion.[1]

The Supreme Court spoke at length in *Atlantic Marine* about the importance of enforcing valid forum-selection clauses. It explained that these provisions represent "the parties' agreement as to the most proper forum," and

---

[1] Since *Atlantic Marine*, numerous district courts have ruled on motions to transfer in multi-defendant cases subject to a forum-selection clause, and none has deployed Rule 21 to thwart transfer. 14-30510. *See, e.g., Carmouche Ins., Inc., v. Astonish Results, L.L.C.,* No. 14-cv-00061, 2014 WL 2740464, at *6-7 (M.D. La., June 17, 2014) (explaining that Rule 21 factors including inconvenience and prejudice to party opposing severance are irrelevant under *Atlantic Marine*); *Valspar Corp. v. E.I. DuPont de Nemours & Co.,* No. 13-cv-3214, 2014 WL 1607584 (D. Minn. Apr. 21, 2014), at *2-3 (same); *Excentus Corp. v. Giant Eagle, Inc.,* No. 13-cv-178, 2014 WL 923520 (W.D. Pa. Mar. 10, 2014), *at 10 (same); *1-Stop Fin. Serv. Centers of Am., LLC v. Astonish Results, LLC,* No. 13-cv-961, 2014 WL 279669 (W.D. Tex. Jan. 23, 2014), at *10 (same); *Monje v. Spin Master, Inc.,* No. 09-cv-1713, 2013 WL 6498073, at *4 (D.Ariz. Dec. 11, 2013) (noting that in these circumstances, "[s]everance is a necessary precursor to . . . transfer, and it is justified by the same reason [s]"). Moreover, the district courts that have not enforced forum-selection clauses in multi-defendant cases have not done so on the basis of Rule 21. *In re TFT-LCD (Flat Panel) Antitrust Litig.,* MDL No. 1827, 2014 WL 1477748 (N.D. Cal. Apr. 14, 2014), at *2 (determining that public-interest considerations weighed against transfer); *Aquila v. Fleetwood, R.V., Inc.,* No. 12-cv-3281, 2014 WL 1379648 (E.D.N.Y. Mar. 27, 2014), at *4-5 (same).

that giving them effect protects the "legitimate expectations" of the parties and "furthers vital interests of the justice system." 134 S. Ct. at 581. "When parties have contracted in advance to litigate disputes in a particular forum," the Court continued, "courts should not unnecessarily disrupt the parties' settled expectations." *Id*. at 584. Although *Atlantic Marine* was a two-party case, the Court's opinion is explicitly premised on the importance of upholding the legitimate expectations of the parties to a forum-selection clause. The Court thus holds that "private interest" factors[2] relevant to a 28 U.S.C. § 1404(a) transfer motion cannot defeat a valid forum-selection clause, nor is it even likely that "public interest" factors[3] can militate against transfer. 134 S. Ct. at 582.

The majority here deviate from *Atlantic Marine* because two of the defendants were not parties to the forum-selection clause and because Fed. R. Civ. P. 21, authorizing severance, must be applied to effectuate the clause. Rule 21 involves essentially the same "private interest" factors that the Court rejected in *Atlantic Marine*.[4]

---

[2] Private interest factors include "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Piper Aircraft Co. v. Reyna*, 454 U.S. 235, 241, n.6, 102 S. Ct. 252, 70 L.Ed. 2d 419 (1981) (internal quotation marks omitted).

[3] Public interest factors include "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." *Id*. at 581 n.6 (quoting *Piper Aircraft v. Reyna*, 454 U.S. 235, 241 n.6, 102 S. Ct. 252, 258 n.6 (1981).

[4] The Rule 21 factors include "(1) whether the claims arose out of the same transaction or occurrence, (2) whether the claims present common questions of law or fact, (3) whether settlement or judicial economy would be promoted, (4) whether prejudice would be averted by severance, and (5) whether different witnesses and documentary proof are required." *PHI, Inc.*, 2014 US Dist. LEXIS 63352, at*15.

No. 14-30510

Yet, according to the majority's new three-factor test (if I understand it correctly), after allowing *Atlantic Marine* to "cut in favor" of one defendant's severance/transfer to the agreed forum, a court may permit the "private interest factors" of the non-forum selection clause defendants to overcome that clause in favor of "the judicial economy considerations of having all claims determined in a single forum."[5] The majority concludes that *Atlantic Marine* cannot "categorically" require severance-and-transfer in all cases. Sadly, the party who negotiated for a specific forum in which to resolve its disputes with a plaintiff is back at square one if the plaintiff joined another defendant.[6]

While I understand the complications that could arise in multiparty litigation where one, or even more than one, forum-selection clause exists, I find it hard to believe that the unanimous Supreme Court might not have been equally percipient. Simple two-party disputes are near a vanishing breed of litigation. It seems highly unlikely that the Supreme Court granted certiorari and awarded the extraordinary relief of mandamus simply to proclaim that a forum selection clause must prevail only when one party sues one other party. The Court is not naive about the nature of litigation today. Further, the Court's reasoning emphasizes the "settled expectations" of parties who have agreed to a forum selection clause. When private parties have chosen *ex ante* to protect themselves by selecting a forum, this is no different from their selection of arbitration for dispute resolution. Arbitration clauses, of course, cannot be rendered unenforceable in multiparty litigation. Finally, the majority's view sacrifices the clarity of *Atlantic Marine* to easy manipulation,

---

[5] Because the majority indiscriminately refer to both types of defendants in terms of "private interest" factors, I interpret the holding as best I can.

[6] A defendant unfortunate enough to be involved in a case sent to the Judicial Panel on Multidistrict Litigation is even behind square one, according to the majority's totally impertinent *dicta*, which have no place in this case.

20

No. 14-30510

because, if it is correct, any clever party to a lawsuit can readily join another party or individual in an attempt to avoid the forum selection clause.

For these reasons, I believe the majority have erroneously and confusingly diminished the scope of *Atlantic Marine*. I concur in the judgment only.