# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

January 9, 2020

Lyle W. Cayce
Clerk

No. 18-31019

P H I, INCORPORATED, formerly known as Petroleum Helicopters, Incorporated,

Plaintiff - Appellee

v.

APICAL INDUSTRIES, INCORPORATED,

Defendant - Appellant

Appeal from the United States District Court
for the Western District of Louisiana

Before OWEN, Chief Judge, and SMITH and DENNIS, Circuit Judges.

JAMES L. DENNIS, Circuit Judge:

PHI, Inc. sued Rolls-Royce, Apical Industries, and Offshore Helicopter Support Services (OHS), after a helicopter PHI owned was required to make an emergency landing in the Gulf of Mexico when its Rolls-Royce-manufactured engine failed. After the landing, the emergency flotation system manufactured by Apical and serviced by OHS partially deflated, causing the helicopter to turn over in the water and resulting in a total loss due to salt water incursion. Relatively early in the case, PHI's action against Rolls-Royce was severed and transferred to federal court in Indiana. That action later settled.

No. 18-31019

Ahead of a jury trial in the Western District of Louisiana on PHI's claims of redhibition (a Louisiana warranty claim sounding in contract law) against Apical and breach of contract against OHS, the magistrate judge presiding over the case by the parties' consent excluded all evidence regarding the cause of the engine failure and determined that he would not submit the issue of Rolls-Royce's liability to the jury as a basis for reduction in the damages award against Apical. The magistrate judge premised these rulings on the mistaken belief that Rolls-Royce could not, as a matter of law, be held solidarily liable along with Apical and OHS for the loss of the helicopter. The jury ultimately found Apical liable for the loss of the helicopter. Because, under Louisiana law, Rolls-Royce is a potential solidary obligor along with Apical, and because a finding of solidary liability would result in a reduction of damages award against Apical due to Rolls-Royce's earlier settlement with PHI, the magistrate judge's pretrial exclusion and verdict form rulings were in error. Accordingly, we VACATE and REMAND for trial on the issue of solidary liability.

**I**

On December 1, 2011, a helicopter owned by PHI, Inc., formerly known as Petroleum Helicopters Inc., "sustained an engine failure and made an emergency water landing." In doing so, the helicopter pilot activated an emergency flotation system and executed a water landing. The pilot and the sole passenger escaped the helicopter unharmed on life rafts. A rescue boat picked up the pilot and passenger, dropped them off at a nearby oil platform, and returned to the helicopter. As the rescue boat then towed the helicopter to the platform, the right section of the flotation system deflated, causing the helicopter to flip over in the Gulf of Mexico. Although PHI recovered the helicopter from the Gulf, the incursion of salt water into the helicopter caused it to be a total loss. A post-accident inspection revealed that the right rear float was punctured, and, unlike the left rear float, it did not have a "doubler," a

patch used to protect from chafing damage where the float connected to the helicopter's railing.

PHI sued Apical Industries, Inc. (Apical), the manufacturer of the flotation system that failed while the helicopter was being towed, as well as Rolls-Royce and Offshore Helicopter Support Services, Inc. (OHS), in Louisiana state court. Rolls-Royce was the engine manufacturer, and OHS serviced the float system before the accident. After removal to federal court,[1] PHI's claims against Rolls-Royce were severed and transferred to Indiana based on a forum-selection clause.[2] The forum-selection clause was contained in a warranty agreement provided in connection with Rolls-Royce's 2011 sale of a replacement part to PHI called a No. 2 bearing.[3] PHI's case against Rolls-Royce in Indiana settled after that court denied summary judgment for Rolls-Royce on PHI's claim.

Ahead of trial against Apical and OHS, the magistrate judge excluded evidence regarding the cause of the Rolls-Royce engine failure, determining that this evidence was not relevant to PHI's claims against Apical or OHS, or to any of Apical or OHS's defenses.[4] The magistrate judge also refused to

---

[1] Also after removal, PHI filed an amended complaint alleging Louisiana redhibition claims against Rolls-Royce, as well as a breach of contract claim against OHS. PHI also brought a strict liability claim under the Louisiana Products Liability Act against Apical. However, the district court dismissed this claim early in the litigation, and that dismissal is not appealed here.

[2] The district court initially denied the motion to sever and transfer. A panel of this court subsequently granted Rolls-Royce's petition for writ of mandamus, *In re Rolls Royce Corp.*, 775 F.3d 671 (5th Cir. 2014), directing the district court to sever PHI's claims against Rolls-Royce and transfer them to the United States District Court for the Southern District of Indiana. *See* 775 F.3d at 674, 683.

[3] The Rolls-Royce engine was installed by Bell Helicopters after its manufacture by Rolls-Royce in 1999. *Petroleum Helicopters, Inc. v. Rolls-Royce Corp.*, 1:15-CV-00840-TWP-DML, 2016 WL 7179362, at *1 (S.D. Ind. Dec. 9, 2016). The No. 2 bearing, the bearing alleged as one potential cause of the Helicopter's engine failure, was sold to PHI and installed in 2011.

[4] The magistrate judge specifically excluded evidence that someone improperly hammered on the No. 2 bearing, causing the engine to fail, as well as "the entirety of the

## No. 18-31019

submit to the jury a question about Rolls-Royce's liability. After a two-day trial, the jury found Apical's floats contained a redhibitory defect and OHS did not breach its contract with PHI. The jury awarded PHI $2,180,000 in damages, from which the magistrate judge later deducted $450,230 to account for the value of the engine, the loss of which Apical was not responsible for. Apical appealed.

## II

Apical asserts on appeal that the magistrate judge was incorrect to exclude evidence of the cause of the Rolls-Royce engine failure and to refuse to submit the issue of Rolls-Royce's liability to the jury. These contentions turn on two points: First, whether a limited warranty agreement between PHI and Rolls-Royce forecloses all potential liability on the part of Rolls-Royce for the salt-water damage caused to the helicopter; and second, if damages for salt-water incursion are in fact allowed, whether their availability makes Rolls-Royce a potential solidary obligor, entitling Apical to submit this question and evidence supporting it to a jury. We address each issue in turn.

## A

The magistrate judge concluded that Rolls-Royce could not be solidarily liable with Apical and OHS, based on a limited warranty agreement executed between PHI and Rolls-Royce in connection with the sale of the No. 2 bearing in 2011 that waived consequential damages.[5] The magistrate judge reasoned

---

deposition testimony of Dr. Edney in his capacity as the corporate representative of Rolls Royce."

[5] The parties do not dispute that the total loss of the helicopter would constitute "consequential damages," as opposed to some other form of damages. This assumption appears correct. *See* UNIF. COMM.CODE § 2-715 ("Consequential damages resulting from the seller's breach include . . . injury to person or property proximately resulting from any breach of warranty."); *Damages*, BLACK'S LAW DICTIONARY (11th ed. 2019) (defining consequential damages as "[l]osses that do not flow directly and immediately from an injurious act but that result indirectly from the act. — Also termed indirect damages" (emphasis omitted)).

that under the limited warranty, "Rolls[-]Royce would not be liable for the same performance as Apical and OHS, and therefore, Rolls-Royce would not be solidarily liable with them." The warranty the magistrate judge relied on provided:

> THIS WARRANTY IS GIVEN EXPRESSLY AND IN PLACE OF ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR PARTICULAR PURPOSE. THERE ARE NOT UNDERSTANDINGS, AGREEMENTS, REPRESENTATIONS, OR WARRANTIES NOT SPECIFIED HEREIN.
>
> ***
>
> The obligations of Rolls-Royce under this Limited Warranty are limited to the repair of the spare module/part as provided herein. In no event, whether as a result of breach of contract or warranty, alleged negligence, or otherwise, shall Rolls-Royce be subject to liability for incidental, consequential, indirect, special or punitive damages of any kind, including without limitation to damage to the engine, airframe or other property, commercial losses, lost profits, loss of use, grounding of engines or aircrafts, inconvenience, loss of time, cost of capital, cost of substitute equipment, downtime, claims of customers, or changes in retirement lives and overhaul periods.

Apical argues that this warranty, which the magistrate judge found valid and enforceable under Indiana law, only applies to a bearing added to the engine ten years after installation of the engine itself, and therefore Rolls-Royce could still potentially be liable for damages to the extent the engine failed for reasons unrelated to the No. 2 bearing. We agree.[6] The Southern District of Indiana's order on Rolls-Royce's motion for summary judgment in the severed action is informative on this point. There, the Indiana federal

---

[6] Although Apical did not specifically raise this distinction before the magistrate judge, the magistrate judge prohibited the parties from briefing the issue of solidary liability in their trial briefs. Under these circumstances, we decline to hold that Apical forfeited the argument.

court determined that PHI had not only brought an action regarding a defect in the No. 2 bearing, which would be covered by the warranty provision, but also a broader design defect claim asserting a defect in a "piccolo tube," which allegedly reduced the amount of oil that could reach the No. 2 bearing and potentially caused the engine failure. *See Petroleum Helicopters, Inc. v. Rolls-Royce Corp.*, 1:15-CV-00840-TWP-DML, 2016 WL 7179362, at \*3–\*4 (S.D. Ind. Dec. 9, 2016). Moreover, according to the Indiana federal court, "the [l]imited [w]arranty applies only to the No. 2 bearing," such that a claim asserting design defect beyond the No. 2 bearing could go forward. *Id.* at \*4. This analysis is persuasive, and we adopt it. The warranty's plain terms apply only to the Rolls-Royce engine's "spare modules and parts." Moreover, PHI's response brief does not meaningfully challenge this point.[7]

Because the warranty's waiver of consequential damages does not apply to the claim that the engine failed due at least in part to a defect outside the No. 2 bearing, a dispute of fact exists as to whether damages for any non-waived defects are recoverable. *See Rolls-Royce Corp.*, 2016 WL 7179362, at \*4 ("Accordingly, because the Limited Warranty applies only to the No. 2 bearing, a genuine issue of material fact remains regarding whether the engine contained a design defect, and summary judgment is denied on this issue." (emphasis omitted)). As discussed in the following section, this dispute of fact is material, and thus should have been put to the jury, because Rolls-Royce may be a solidary obligor under Louisiana law along with Apical. Should a

---

[7] PHI also argued in Indiana federal court that the warranty failed in its essential purpose and was therefore unenforceable. The magistrate judge in the case at bar ruled that even if the warranty failed in its essential purpose, the warranty's waiver of consequential damages was still enforceable under governing Indiana law. Apical did not challenge this portion of the magistrate judge's ruling below, and does not do so on appeal. Accordingly, Apical forfeited any assertion of error on this point. *See Noatex Corp. v. King Const. of Houston, L.L.C.*, 732 F.3d 479, 485 n.4 (5th Cir. 2013) (issues not briefed are waived).

No. 18-31019

jury so find, Apical would be entitled to a reduction in the damages award against it.

## B

Under Louisiana law, solidary liability arises when multiple obligors are liable for the same debt, and when performance by one would relieve the others' liability to the obligee.[8]  LA. CIV. CODE art. 1794 (2019).  Such a solidary obligation is not to be presumed but can arise from either "a clear expression of the parties' intent or from the law."[9]  *Id.* art. 1796.  "An obligation may be solidary though it derives from a different source for each obligor."  *Id.* art. 1797.  Solidary liability is designed to protect the obligee by placing responsibility for the debt fully on the obligors, who can then seek contribution from one another.  *Id.* art. 1790; *see also id.* art. 1805 ("A party sued on an obligation that would be solidary if it exists may seek to enforce contribution against any solidary co-obligor by making him a third[-]party defendant . . . .").  If a co-obligor has been released by his obligee, including through settlement, that potential co-obligor can no longer be made a party to the case; however, because solidary obligors are liable for the same debt, a settlement between the obligee and a solidary obligor reduces the obligation owed by the other obligors "in the amount of the remitted share," which means reduction by an

---

[8] The parties do not dispute that Louisiana law applies to the substantive claims for damages in this case.  In determining what state's laws apply in this diversity action, we apply Louisiana conflicts of law principles.  *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).  Louisiana's conflicts of law regime requires, for a contract claim like redhibition, a determination as to "the state whose policies would be most seriously impaired if its law were not applied to that issue," including consideration of, inter alia, "the pertinent contacts of each state to the parties and the transaction . . . [and] the nature, type, and purpose of the contract."  LA. CIV. CODE art. 3537.  Because the magistrate judge has made no findings relevant to these considerations and the parties have not briefed nor submitted evidence pointing to the laws of any state other than Louisiana for PHI's substantive claims, we proceed on the assumption that Louisiana law applies to these claims.

[9] For example, in redhibition suits against the sellers and manufacturers of the thing sold, solidary liability arises by law.  *See* LA. CIV. CODE art. 2545, rev. cmt. (c), (d) (2019).

equal share of the liability. *Id.* art. 1803, rev. cmt. (a) (2019); *id.* art. 1804. "Among solidary obligors, each is liable for his virile portion. If the obligation arises from a contract or quasi-contract, virile portions are equal in the absence of agreement or judgment to the contrary." *Id.* art. 1804.

PHI argues that, even assuming some disputes of fact exist with respect to the scope of the limited warranty, Rolls-Royce cannot be a solidary obligor because it and Apical cannot as a factual matter be liable for the same dollar amounts in damages. As the argument goes, Apical is undisputedly not responsible for damage to the Rolls-Royce-manufactured engine, which the parties agree was destroyed prior to the helicopter landing in the water. Rolls-Royce, on the other hand, could potentially be responsible for the engine loss (assuming, for sake of this argument, that the claim against Rolls-Royce had not settled) in addition to the later losses caused by salt water incursion.

We disagree. Because Louisiana law does not require that damages amounts be identical for two parties to be held liable in solido, the magistrate judge erred in refusing to submit the issue of solidary liability to the jury.

The Louisiana Supreme Court has devised a three-part test based on the Louisiana Civil Code to determine when an obligation is solidary: (1) "when [the obligors] are obliged to the same thing," (2) "so that each may be compelled for the whole," and (3) "when payment by one exonerates the other toward the creditor." *Hoefly v. Gov't Employees Ins. Co.*, 418 So. 2d 575, 576 (La. 1982);[10]

---

[10] The Louisiana Supreme Court relied on former Louisiana Civil Code article 2091 in formulating this test: "There is an obligation *in solido* on the part of the debtors, when they are all obliged to the same thing, so that each may be compelled for the whole, and when the payment which is made by one of them, exonerates the others toward the creditor." LA. CIV. CODE art. 2091 (1976). The article has since been revised, and now appears as article 1794: "An obligation is solidary for the obligors when each obligor is liable for the whole performance. A performance rendered by one of the solidary obligors relieves the others of liability toward the obligee." LA. CIV. CODE art. 1794 (2019). The revision comments clarify that article 1794 "restates the principle contained in C.C. Art. 2091" and "does not change the law." *Id.* art. 1794, rev. cmt. (2019).

No. 18-31019

*In re de la Vergne*, 205 F.3d 864, 866 (5th Cir. 2000) (recognizing Louisiana's three-part test). In establishing this test, the Louisiana Supreme Court held that obligors can be solidarily liable even though "obligations . . . ar[o]se from separate acts or by different reasons."[11] *Hoefly*, 418 So. 2d at 579; *see also* LA. CIV. CODE art. 1797 (2019) ("An obligation may be solidary though it derives from a different source for each obligor.").

Louisiana courts have held that "when two obligors are coextensively liable for at least *part* of the obligee's damages, the obligation is solidary as to their common liability." *Yarbrough v. Federal Land Bank Assn.*, 616 So. 2d 1327, 1335 (La. Ct. App. 2d Cir. 1993) (emphasis added). Co-obligors, then, may be solidarily liable for some but not all of an obligee's damages, depending on the resolution of various factual and causation issues. *See id.* For example, in *Steptoe v. Lallie Kemp Hosp.*,[12] Murphy Steptoe died from medical malpractice following an automobile accident. 634 So.2d at 334. Steptoe's death was caused by two "separate and distinct acts of negligence," where the

---

[11] This principle—that obligors are solidary when they are obligated to repair the same damage—holds true in a variety of factual scenarios in Louisiana jurisprudence. For example, "[w]here the combined fault of a contractor and a manufacturer of materials results in a loss [i.e., the defective condition of a fireplace and chimney] for which each defendant would be liable for the whole, the defendants' liability may be solidary." *Reeves v. Dixie Brick, Inc.*, 403 So. 2d 792, 795 (La. Ct. App. 2d Cir. 1981). Similarly, car accident tortfeasors and medical malpractice tortfeasors may be held solidarily liable for a victim's death. *See Steptoe v. Lallie Kemp Hosp.*, 634 So. 2d 331, 335–36 (La. 1994). A check depositor and a depository bank may also be held solidarily liable where their combined acts resulted in the improper deposit of a restrictively endorsed check, even though the depositor and bank engaged in "separate acts of conversion." *Schulingkamp v. Carter*, 984 So. 2d 795, 799 (La. Ct. App. 1st Cir. 2008) *rev'd*, 992 So. 2d 973 (La. 2008). These examples further illustrate that the underlying test is whether co-obligors are co-extensively liable for the same debt, regardless of how each party's debt arose. *See Joiner v. Diamond M Drilling Co.*, 688 F.2d 256, 263 (5th Cir. 1982) (finding a vessel owner, manufacturer, and physician solidary liable despite the fact that "their obligations ar[o]se from different acts and for different reasons" because "they are each obligated for the same thing," i.e., the victim's death).

[12] Although *Steptoe* is a personal injury case, the solidary liability regime applicable here applied in that case because it preceded Louisiana's 1996 revision to convert to a pure comparative fault regime in tort cases.

car accident tortfeasors caused Steptoe's initial injury and the medical malpractice tortfeasors caused Steptoe's death. *Id.* at 335. The Louisiana Supreme Court held that while only the car accident tortfeasors were liable for Steptoe's initial injury, both sets of parties were liable for Steptoe's death, and "[t]hus, the two groups now have solidary liability for the death." *Id.* at 336.

Similarly, here, only Rolls-Royce could have been liable for the helicopter's engine failure. Like the car accident tortfeasors in *Steptoe*, Rolls-Royce alone was liable for the initial injury—here, damage to the engine. According to the jury, Apical's faulty flotation system later caused the loss of the helicopter. This intervening cause should not exonerate the initial tortfeasor in our case (Rolls-Royce) any more than it did in *Steptoe. Cf. id.* As PHI argued in Indiana federal court: "[W]hen an engine fails in flight, it is reasonably foreseeable that the helicopter could be lost." Though Rolls-Royce and Apical may not be solidarily liable for the entire debt (as Apical shares no liability for the engine damage), they may be solidarily liable for the portion of PHI's damages that they may have co-extensively caused—the loss of the helicopter due to salt water incursion. *See Yarbrough*, 616 So. 2d at 1335; *see also Glasgow v. PAR Minerals Corp.*, 70 So.3d 765, 772 (La. 2011) ("[P]arties are solidarily liable to the extent that they share coextensive liability to repair certain elements of the same damage." (quotation marks omitted)).

Thus, the magistrate judge erred as a matter of law in refusing to submit to the jury the question of Rolls-Royce's liability as a basis for reduction in the damages award against Apical.

## III

Having determined the magistrate judge erred in concluding solidary liability could not exist between Apical and Rolls-Royce, we must determine the remedy for this error. Apical seeks a full retrial as to its own liability

because the magistrate judge failed to include a jury question as to Rolls-Royce's liability.

The magistrate judge reversibly erred in failing to submit the question of Rolls-Royce's liability to the jury for purposes of determining its status as a solidary obligor. His resulting exclusion of evidence relevant to that question was also, therefore, erroneous. As Apical points out and we have previously concluded, Rolls-Royce may be a solidary obligor with respect to the loss of the helicopter, for which Apical is currently obligated to pay $1,729,770. This obligation is cut in half if Rolls-Royce is a solidary obligor, because Rolls-Royce and PHI have settled all claims between themselves in the Indiana action, which, under Louisiana law, results in a reduction in any damages award by half. *See* LA. CIV. CODE art. 1803, rev. cmt. (a), (b) (2019); *Osborne v. Ladner*, 691 So. 2d 1245, 1257 (La. Ct. App. 1st Cir. 1997) (reducing award by half against one of two solidary obligors in contract case to account for settlement of the other solidary obligor). And the question of solidary liability "is a mixed question of law and fact," *Jackson v. Rubicon, Inc.*, 844 So. 2d 394, 397 (La. Ct. App. 3d Cir. 2003), such that a jury finding on this issue is required, *see United States v. Gaudin*, 515 U.S. 506, 512 (1995) ("[T]he application-of-legal-standard-to-fact sort of question . . . , commonly called a 'mixed question of law and fact,' has typically been resolved by juries.").

We need not vacate the jury's finding of liability as to Apical to cure this error, however.[13] We need only require a trial on whether Rolls-Royce is also

---

[13] Apical also argues that the exclusion of evidence pertaining to Rolls-Royce's liability also justified full retrial on Apical's own liability, because the jury was allegedly tainted by the lack of context and background that evidence about the cause of the engine failure would have provided. We reject this argument. The parties stipulated that the engine failed, and the cause for the engine's failure is not relevant to the Float System's functionality and purpose, about which the magistrate judge specifically allowed evidence. Accordingly, Apical cannot show reversible error as to its own liability. *See E.E.O.C. v. Manville Sales Corp.*, 27 F.3d 1089, 1093 (5th Cir. 1994) ("In order to vacate a judgment based on an error in an

responsible for the loss of the helicopter such that it is a solidary obligor, along with Apical, entitling Apical to a reduction in the amount of damages it owes to PHI. *See Taylor v. U.S. Fid. & Guar. Ins. Co.*, 630 So. 2d 237, 239 (La. 1993) (pointing out, in a pre-comparative fault tort case applying solidary liability regime when one party settled, that "the reduction applies only when the remaining defendants prove at trial that the released party was a joint tortfeasor and therefore solidarily liable"); *see also Carter v. EPSCO, Inc.*, 681 F.2d 1062, 1067 (5th Cir. 1982) (remanding for factual finding as to solidary liability where district court erroneously concluded that one potential co-obligor could not be solidarily liable as a matter of law); *Bank of New Orleans & Tr. Co. v. Monco Agency, Inc.*, 823 F.2d 888, 889 (5th Cir. 1987) (remanding for trial as to the liability of one of several potential solidary obligors where district court erroneously held prescription had run as to that potential obligor). In requiring a trial on this issue, we intimate no view on the merit of the parties' respective arguments except to the extent set out herein, the evidence supporting such arguments, or any additional evidentiary or legal rulings the magistrate judge may deem necessary to pass upon on remand.

**\*\*\***

For these reasons, we VACATE in part and REMAND for further proceedings consistent with this opinion.

---

evidentiary ruling, this court must find that the substantial rights of the parties were affected." (internal quotation marks omitted)); *Kelly v. Boeing Petroleum Services, Inc.*, 61 F.3d 350, 361 (5th Cir. 1995) ("An error does not affect substantial rights if the court is sure, after reviewing the entire record, that the error did not influence the jury or had but a very slight effect on its verdict." (internal quotation marks omitted)).