**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-3682
_____

IN RE: HOWMEDICA OSTEONICS CORP,
a New Jersey corporation and subsidiary
of STRYKER CORPORATION,

                                        Petitioner
_____

On Petition for Writ of Mandamus from the United States
District Court
for the District of New Jersey
(D.N.J. No. 2:14-cv-03449)
Honorable Claire C. Cecchi, U.S. District Judge
_____

Argued: January 25, 2017

Before: KRAUSE, SCIRICA, and FUENTES, *Circuit Judges*

(Opinion Filed: August 15, 2017)

Robert J. Carty, Jr. (Argued)
Seyfarth Shaw
700 Milam Street, Suite 1400
Houston, TX 77002

Michael D. Wexler
Seyfarth Shaw
233 South Wacker Drive, Suite 8000
Chicago, IL 60606

*Attorneys for Plaintiff-Petitioner Howmedica Osteonics Corp.*

Jed L. Marcus (Argued)
Bressler Amery & Ross
325 Columbia Turnpike, Suite 301
Florham Park, NJ 07932

*Attorney for Defendant-Respondents Brett Sarkisian,
Keegan Freeman, Michael Nordyke, Taylor Smith, and
Bryan Wyatt*

Leigh Ann Buziak
Anthony B. Haller (Argued)
Rosemary McKenna
Blank Rome
130 North 18th Street
One Logan Square
Philadelphia, PA 19103

David C. Kistler
Stephen M. Orlofsky
Blank Rome
301 Carnegie Center, Third Floor
Princeton, NJ 08540

*Attorneys for Defendant-Respondent DePuy Orthopaedics
Inc.*

Jeffery K. Brown (Argued)
Erik M. Andersen
Payne & Fears
4 Park Plaza, Suite 1100
Irvine, CA 92614

Robert B. Rosen
Hellring Lindeman Goldstein & Siegal
One Gateway Center, 8th Floor
Newark, NJ 07102

*Attorneys for Defendant-Respondent Golden State
Orthopaedics Inc.*

_____

OPINION OF THE COURT
_____

KRAUSE, *Circuit Judge*.

In the absence of a forum-selection clause, a defendant in federal court may move under 28 U.S.C. § 1404(a) for a transfer to another district for "convenience" and "in the interest of justice." But where contracting parties have specified the forum in which they will litigate disputes arising from their contract, federal courts must honor the forum-selection clause "[i]n all but the most unusual cases," following the Supreme Court's instructions in *Atlantic Marine Construction Co. v. U.S. District Court*, 134 S. Ct. 568, 583 (2013). This mandamus proceeding requires us to determine how district courts should apply *Atlantic Marine* where all defendants seek a transfer to one district under

3

§ 1404(a) and where some, but not all, of those defendants are parties to forum-selection clauses that designate different districts. Because we conclude the District Court erred in its application of *Atlantic Marine* by declining to honor the forum-selection clauses applicable to some of the litigants and by transferring the action in its entirety, we will issue a writ of mandamus and, applying the test we announce today, direct the District Court to transfer claims against only the two corporate defendants who did not agree to any forum-selection clause.

## I. Background

California natives Keegan Freeman, Michael Nordyke, Brett Sarkisian, Taylor Smith, and Bryan Wyatt (collectively, "Sales Representatives") are former California sales representatives for Howmedica Osteonics Corp., a New Jersey corporation, and its parent company, Stryker Corp. (collectively, "Howmedica").[1]  The Sales Representatives

---

[1] Any distinctions between the two companies are immaterial to this mandamus action, as "Howmedica Osteonics Corp." was a party to all of the Sales Representatives' employment agreements, whether by name in some agreements or as a subsidiary included within the definition of "Stryker," where that entity was the party, in others.  And although the Sales Representatives previously contended that Howmedica Osteonics Corp. lacked standing to enforce Stryker's contracts, they have not renewed—and hence have waived—that contention here. *See Gonzalez v. AMR*, 549 F.3d 219, 225 (3d Cir. 2008); *see also United States v. Menendez*, 831 F.3d 155, 175 (3d Cir. 2016) (applying traditional appellate waiver rules in a mandamus

4

began their employment with Howmedica when they signed employment agreements with confidentiality and non-compete clauses. The agreements also contained forum-selection clauses, which designated New Jersey (or, in Nordyke's case, Michigan) as the forum for any litigation arising out of the agreements.

After clashes with Howmedica over its management and their compensation, the Sales Representatives resigned and became independent contractors representing Howmedica's competitor, DePuy Orthopaedics, Inc., and DePuy's regional distributor, Golden State Orthopaedics, Inc. Some of Howmedica's customers, who were previously assigned to the Sales Representatives, followed them, leading Howmedica to suspect that the Sales Representatives, DePuy, and Golden State had conspired to convert those customers even in advance of the Sales Representatives' resignation dates. Howmedica therefore brought suit in the District of New Jersey, charging DePuy and the Sales Representatives with breach of contract and related claims under state law, and joining Golden State to the suit as a "necessary party."

Emphasizing the convenience to themselves and to the witnesses in California, the defendants promptly moved to transfer the case to the Northern District of California pursuant to 28 U.S.C. § 1404(a), which, for "the convenience of parties and witnesses" and "in the interest of justice," allows transfer to a district where the case "might have been brought." *See Howmedica Osteonics Corp. v. Sarkisian*

proceeding), *cert. denied sub nom. Menendez v. United States*, 137 S. Ct. 1332 (2017).

5

*(Howmedica I)*, No. 14-3449, 2015 WL 1780941, at *2 (D.N.J. Apr. 20, 2015). After balancing the relevant public and private interests, the District Court agreed and ordered the transfer. *See Howmedica Osteonics Corp. v. Sarkisian (Howmedica II)*, No. 14-3449, 2016 WL 8677214, at *2-6 (D.N.J. Aug. 26, 2016).[2] The District Court did not address Golden State's separate argument asserting that the District of New Jersey lacked personal jurisdiction as to that defendant. *See Howmedica II*, 2016 WL 8677214, at *2-6.[3]

---

[2] In so doing, the District Court affirmed the order of the Magistrate Judge, who had granted the transfer motions pursuant to his authority under 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72(a), and who had held, in the alternative, that the District Court lacked personal jurisdiction over Golden State. *See Howmedica I*, 2015 WL 1780941, at *1 n.2, *7-9 & n.11. The Magistrate Judge declined to address Golden State's and the Sales Representatives' alternative contention that, because venue in New Jersey was improper under the federal venue statute, 28 U.S.C. § 1391, transfer was required under 28 U.S.C. § 1406, which authorizes transfer for the purpose of curing venue defects. *See Howmedica I*, 2015 WL 1780941, at *2. No defendant has renewed these venue objections before this Court, and they are therefore waived. *See Gonzalez*, 549 F.3d at 225.

[3] Golden State preserved its personal jurisdiction challenge by raising it before both the District Court and this Court. The other defendants, however, did not. Although the Sales Representatives also asserted to the Magistrate Judge and to the District Court that New Jersey lacked personal jurisdiction over them, personal jurisdiction is "a waivable

While those New Jersey proceedings were pending, Golden State filed its own suit for declaratory relief against Howmedica in the Northern District of California, alleging that the non-compete clauses in Howmedica's employment agreements violated California law. That district court issued an order deeming Golden State's suit related to the transferred New Jersey case and also issued two preliminary scheduling orders in the transferred case, but it then stayed both cases after Howmedica petitioned this Court for a writ of mandamus. Howmedica now asks us to vacate the District Court's transfer order on the ground that it contravenes the Supreme Court's decision in *Atlantic Marine Construction Co. v. U.S. District Court*, which held that, except in "the most unusual cases," a district court should give effect to a valid forum-selection clause. 134 S. Ct. 568, 583 (2013).[4]

---

right," *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.14 (1985); *see, e.g.*, Fed. R. Civ. P. 12(h)(1), and the Sales Representatives waived any personal jurisdiction challenge by failing to raise it here, *see Gonzalez*, 549 F.3d at 225. Moreover, all of the Sales Representatives but one consented to jurisdiction in New Jersey within their employment agreements. *See Burger King*, 471 U.S. at 472 n.14. For its part, DePuy has never raised a personal jurisdiction objection.

[4] In *Atlantic Marine*, the Supreme Court "presuppose[d] a contractually valid forum-selection clause." 134 S. Ct. at 581 n.5. We will do the same, because no defendant has challenged the validity of the forum-selection clauses in the Sales Representatives' employment agreements, thus waiving any such challenge, *see Gonzalez*, 549 F.3d at 225, and because, regardless of the treatment of

Below, we first confirm our jurisdiction to entertain Howmedica's mandamus petition. Second, we consider the applicable standard of review. Third, we address the crux of this case: how district courts should apply *Atlantic Marine* when all defendants seek a transfer to one district under § 1404(a), but only some of those defendants agreed to forum-selection clauses that designate a different district.

## II. Discussion

### A. Jurisdiction[5]

The defendants have challenged our jurisdiction, contending that review of a § 1404(a) transfer order is permissible only to remedy a procedural defect and that, regardless, the Northern District of California's post-transfer orders in this case preclude our review. We, however, perceive no jurisdictional defect.

The All Writs Act, 28 U.S.C. § 1651, grants us jurisdiction to adjudicate a mandamus petition challenging an interlocutory order over which, pursuant to another jurisdictional statute, we could exercise jurisdiction at a later point. *See United States v. Wright*, 776 F.3d 134, 145 (3d

---

the agreements' non-compete clauses under California law, *see generally Edwards v. Arthur Andersen LLP*, 189 P.3d 285, 290-91 (Cal. 2008), the non-compete clauses are severable from the agreements' forum-selection clauses.

[5] The District Court had subject-matter jurisdiction pursuant to 28 U.S.C. § 1332.

8

Cir. 2015); *Council Tree Commc'ns, Inc. v. FCC*, 503 F.3d 284, 292-93 (3d Cir. 2007). Here, because 28 U.S.C. § 1291 affords us jurisdiction to review district courts' § 1404(a) transfer orders after entry of final judgment, those transfer orders are reviewable on a mandamus petition. *See In re United States*, 273 F.3d 380, 382-85 & n.4 (3d Cir. 2001); *Nascone v. Spudnuts, Inc.*, 735 F.2d 763, 772-74 (3d Cir. 1984). Moreover, under our case law, our mandamus jurisdiction over transfer orders encompasses both procedural and legal issues. *See In re United States*, 273 F.3d at 384 (procedural issues); *id.* at 389-90 (legal issue). The District Court's § 1404 transfer order therefore falls within a class of orders reviewable on mandamus.

But that does not end our jurisdictional inquiry, for we do not "indefinitely" possess mandamus jurisdiction, and, "once the transferee court proceeds with the transferred case, the decision as to the propriety of transfer is to be made in the transferee court," whether by appeal or by mandamus petition to the court of appeals for the transferee circuit. *Id.* at 384. The question, then, is at what point the transferee court "proceeds" with a transferred case, and whether the transferee court in this case, by issuing two scheduling orders and an order deeming the case related to Golden State's previously filed case, has crossed that threshold.

We conclude this case has not proceeded in the Northern District of California in a manner that would deprive us of jurisdiction. In *In re United States*, even after the transferee court had received the record from the Eastern District of Pennsylvania and had "scheduled the case for prompt trial," we held that we retained mandamus jurisdiction over the Eastern District of Pennsylvania's transfer order. *Id.* at 382-84. And although we declined to indicate "the specific

9

length of time needed to allow the party resisting transfer to seek review" before our Court, we held that the Government, contesting the transfer order by mandamus petition, had "acted with sufficient dispatch"—even though the Government had filed its mandamus petition thirty-three days after the Eastern District of Pennsylvania had denied the Government's request for reconsideration of the transfer order and twelve days after the transferee court had issued a trial scheduling order. *See id.* at 382, 384; Order, *United States v. Streeval*, No. 01-0084-1 (M.D. Tenn. June 6, 2001), ECF No. 12.

We reach the same conclusion here. Howmedica filed its mandamus petition only twenty-seven days after the District Court's transfer order, as compared to the thirty-three day delay in *In re United States*. And although the transferee court in the Northern District of California issued two case management scheduling orders and an order relating the transferred case to Golden State's previously filed case, those orders do not show that the transferee court here proceeded any further with the case than the transferee court did in *In re United States* by issuing a trial scheduling order. Because we have held that case management orders in the transferee court are not sufficient to divest us of jurisdiction, we conclude that the Northern District of California did not proceed with this case and that Howmedica acted with "sufficient dispatch" in filing its mandamus petition, which we have jurisdiction to consider. *In re United States*, 273 F.3d at 382-84.[6]

---

[6] In *In re United States*, we did not identify at what point the transferee court definitively "proceeds" with the case so as to divest us of mandamus jurisdiction, 273 F.3d at

## B. Standard of Review

A writ of mandamus is, of course, an "extraordinary" remedy. *United States v. Wright*, 776 F.3d 134, 145-46 (3d Cir. 2015). It may issue only if the petitioner shows (1) a clear and indisputable "abuse of discretion or . . . error of law," (2) "a lack of an alternate avenue for adequate relief," and (3) "a likelihood of irreparable injury." *Id.*; *see also*

384, whether it occurs at the moment the transferee court issues a discovery ruling, *see* Fed. R. Civ. P. 26(b), (c); Fed. R. Civ. P. 37, at the moment it issues a legally binding ruling that would become the law of the case, *see Musacchio v. United States*, 136 S. Ct. 709, 716 (2016); *Hayman Cash Register Co. v. Sarokin*, 669 F.2d 162, 168-69 (3d Cir. 1982), or at the moment some other threshold is crossed. We likewise do not resolve that question today, given that our ruling in *In re United States* controls the jurisdictional analysis here.

DePuy's counsel raised the concern at argument that, if the transferor Circuit can retain jurisdiction notwithstanding a transfer order, then the resulting jurisdictional regime will prompt extensive discovery requests in future cases, reaching even merits discovery under the guise of determining § 1404(a) transfer motions. We believe that concern is unfounded, for our longstanding precedent provides that discovery on the merits "is irrelevant to the determination of the preliminary question of transfer." *McDonnell Douglas Corp. v. Polin*, 429 F.2d 30, 30-31 (3d Cir. 1970) (per curiam); *accord Wood v. Zapata Corp.*, 482 F.2d 350, 357 (3d Cir. 1973).

11

*Cheney v. U.S. Dist. Court*, 542 U.S. 367, 381 (2004); *Sunbelt Corp. v. Noble, Denton & Assocs., Inc.*, 5 F.3d 28, 30 (3d Cir. 1993). Even when these requirements are met, we may, in the exercise of our discretion, decline to issue a writ of mandamus when it is not "appropriate under the circumstances." *Cheney*, 542 U.S. at 381.

Appropriate circumstances are more readily present where, as here, a petitioner challenges a transfer order. Transfer orders as a class meet the second requirement for a writ of mandamus, "a lack of an alternate avenue for adequate relief," *Wright*, 776 F.3d at 146, because "the possibility of an appeal in the transferee forum following a final judgment there is not an adequate alternative to obtain the relief sought," *Sunbelt Corp.*, 5 F.3d at 30. Transfer orders likewise meet the third requirement, "a likelihood of irreparable injury," *Wright*, 776 F.3d at 146, because an erroneous transfer may result in "judicially sanctioned irreparable procedural injury," *Chi., R.I. & P.R. Co. v. Igoe*, 212 F.2d 378, 381 (7th Cir. 1954); *accord In re United States*, 273 F.3d at 385. Thus, our inquiry here collapses to the first requirement: Was the District Court's transfer order a clear and indisputable "abuse of discretion or . . . error of law" for which mandamus relief is appropriate? *Wright*, 776 F.3d at 146; *see In re United States*, 273 F.3d at 385-90; *Carteret Sav. Bank, FA v. Shushan*, 919 F.2d 225, 230-33 (3d Cir. 1990). We will apply this standard of review, turning now to the merits of the parties' dispute.

## C. Application of *Atlantic Marine*

The Supreme Court made clear in *Atlantic Marine* that, in most cases, district courts must enforce valid forum-selection clauses when adjudicating § 1404(a) transfer

motions, but the Court did not have occasion to address how that general rule should apply where non-contracting parties are present, much less how it should apply where, as here, there are other complications such as competing forum-selection clauses, personal jurisdiction challenges, and allegations of necessary party status.  That is the quandary we confront today, and we resolve it by (1) reviewing the legal principles relevant both in the absence of a forum-selection clause and where one is present; (2) developing from those principles a framework for applying *Atlantic Marine* to cases involving both contracting and non-contracting parties; and (3) applying that framework to the facts of this case.

## 1.  Governing Legal Principles

To understand *Atlantic Marine*'s significance and its instructions regarding § 1404(a) transfers when a forum-selection clause is present, we begin with a review of the legal principles governing the § 1404(a) transfer analysis in the absence of a forum-selection clause.  In such cases, courts decide whether to grant a § 1404(a) transfer by evaluating various private and public interests.  *See Atl. Marine*, 134 S. Ct. at 581 & n.6; *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995).  The balancing of those interests is in the district courts' discretion, *see Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970), but we have prescribed an "enumeration of factors to be balanced" in each case, *Jumara*, 55 F.3d at 879-80.

Private interests to be balanced relate to "the convenience of the parties and witnesses."  28 U.S.C. § 1404(a).  They therefore include the "plaintiff's forum preference as manifested in the original choice"; "the defendant's preference"; "whether the claim arose

13

elsewhere"; "the convenience of the parties as indicated by their relative physical and financial condition"; "the convenience of the witnesses"; and "the location of books and records," *Jumara*, 55 F.3d at 879, as well as "all other practical problems that make trial of a case easy, expeditious and inexpensive," *Atl. Marine*, 134 S. Ct. at 581 & n.6.

By contrast, public interests to be balanced are not necessarily tied to the parties, but instead derive from "the interest of justice." 28 U.S.C. § 1404(a). These interests include "the enforceability of the judgment"; "the relative administrative difficulty in the two fora resulting from court congestion"; "the local interest in deciding local controversies at home"; "the public policies of the fora"; and "the familiarity of the trial judge with the applicable state law in diversity cases." *Jumara*, 55 F.3d at 879-80. We regard these public interests to include judicial economy considerations, which support "having the two actions in the same district (through transfer)" when the two cases are in different courts but involve "the same or similar issues and parties."[7] 1 James Moore et al., *Moore's Manual: Federal*

---

[7] To the extent we recognized the "practical considerations that could make the trial easy, expeditious, or inexpensive" as a public interest in *Jumara*, 55 F.3d at 879, we did so with judicial economy considerations in mind, as those particular practical considerations constitute a public interest, while practical considerations that might burden the parties constitute a private interest. Today, we clarify that "practical problems that make trial of a case easy, expeditious, and inexpensive" represent a private interest, as the Supreme Court stated in *Atlantic Marine*, 134 S. Ct. at

14

*Practice and Procedure*, § 7.81[3][c] (2017). In other instances, judicial economy considerations weigh against transfer when a separate case involving "the same or similar legal and factual issues" is pending in the originating district. *Id.*

The weighing of private and public interests under § 1404(a) changes, however, if a forum-selection clause enters the picture. When that happens, as the Supreme Court clarified in *Atlantic Marine*, "district courts [must] adjust their usual § 1404(a) analysis in three ways." 134 S. Ct. at 581. Specifically, district courts (1) must give no weight to the forum preferred by "the party defying the forum-selection clause"; (2) must deem the private interests to "weigh entirely in favor of the preselected forum" because the parties agreed to the preselected forum and thereby waived the right to challenge it as inconvenient; and (3) must proceed to analyze only public interests. *Id.* at 581-82. The Supreme Court explained that, with these modifications to the typical § 1404(a) analysis, district courts should enforce valid forum-selection clauses "[i]n all but the most unusual cases." *Id.* at 583.

While the Court in *Atlantic Marine* modified the § 1404(a) transfer inquiry for contracting parties who

581 n.6, and as we have often stated in the forum non conveniens context, *see, e.g.*, *Kisano Trade & Invest Ltd. v. Lemster*, 737 F.3d 869, 873 (3d Cir. 2013); *Eurofins Pharma US Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 161 (3d Cir. 2010), and we acknowledge judicial economy considerations to be a distinct, cognizable public interest.

affirmatively agreed to litigate in a particular forum as an express term of their agreements, *see id.* at 581-82, it did not disturb in any way the customary § 1404(a) analysis that applies where parties are not bound by a forum-selection clause, *see id.* at 581-84. Those modifications, in other words, are inapplicable where a case involves only non-contracting parties. And for good reason. Where *Atlantic Marine* establishes what amounts to a strong presumption in favor of enforcing forum-selection clauses, *see id.* at 581, 583, the private and public interests that inform a § 1404(a) transfer inquiry do not bespeak a presumption one way or another and require a district court to conduct a wide-ranging inquiry specific to the circumstances of that case, *see Jumara*, 55 F.3d at 879-80. Similarly, where the *Atlantic Marine* framework would wholly deprive non-contracting parties of their right to seek transfer on the basis of their private interests, the customary § 1404(a) analysis guarantees them that right. *See id.*

For these reasons, we have need of a separate framework to determine how forum-selection clauses affect the § 1404(a) transfer analysis where both contracting and non-contracting parties are found in the same case and where the non-contracting parties' private interests run headlong into the presumption of *Atlantic Marine*—hence, the problem we confront today.

## 2. Four-Step Framework

Fortunately, in taking on this challenge, we do not write on a blank slate. Our colleagues in the Fifth Circuit have forged an approach that we consider a helpful starting point for our own.

In *In re Rolls Royce Corp.*, where a helicopter owner brought suit against various entities involved in its aircraft's design and manufacture, and where the forum-selection clause applied to only one of the defending parties (Rolls Royce), the Fifth Circuit prescribed a three-step framework. 775 F.3d 671, 674, 681 (5th Cir. 2014). First, the Fifth Circuit confirmed that, owing to the Supreme Court's guidance in *Atlantic Marine*, contracting parties' private interests support transferring any claims involving those parties to their agreed-upon forum, a result which may be accomplished after first severing those claims pursuant to Federal Rule of Civil Procedure 21. *Id.* at 681. Second, the court recognized that, just as non-contracting parties' private interests are routinely considered in a traditional § 1404(a) analysis, those interests must still be considered even when a forum-selection clause is present in the case. *Id.* Lastly, the Fifth Circuit directed district courts to "ask whether this preliminary weighing is outweighed by the judicial economy considerations of having all claims determined in a single lawsuit," taking into account "procedural mechanisms . . . , such as common pre-trial procedures, video depositions, stipulations, etc." that could alleviate any inefficiencies resulting from severance. *Id.* Applying this framework, the court concluded that it would enforce the forum-selection clause in that case by severing and transferring claims against Rolls Royce, but also observed that non-contracting parties' interests and considerations of judicial economy at times "can trump a forum-selection clause." *Id.* at 679-83.

We embrace much of our Sister Circuit's approach, but, prompted by the challenges raised in this case—for example, the contention that a forum specified in some of the parties' contracts lacks personal jurisdiction over Golden

17

State and the assertion that Golden State is a "necessary party"—we deem some modifications warranted. Building on *Rolls Royce*, we prescribe a four-step inquiry in which the reviewing court, whether the District Court in the first instance, or this Court on appeal, will consider in sequence: (1) the forum-selection clauses, (2) the private and public interests relevant to non-contracting parties, (3) threshold issues related to severance, and (4) which transfer decision most promotes efficiency while minimizing prejudice to non-contracting parties' private interests.

Step One: Forum-Selection Clauses. At the first step, the court assumes that *Atlantic Marine* applies to parties who agreed to forum-selection clauses and that, "[i]n all but the most unusual cases," claims concerning those parties should be litigated in the fora designated by the clauses. *Atl. Marine*, 134 S. Ct. at 583. This step mirrors the first step of the Fifth Circuit's framework, which provides that "the private factors of the parties who have signed a forum agreement . . . cut in favor of severance and transfer to the contracted[-]for forum." *Rolls Royce*, 775 F.3d at 681.

Step Two: Private and Public Interests Relevant to Non-Contracting Parties. Second, the court performs an independent analysis of private and public interests relevant to non-contracting parties, just as when adjudicating a § 1404(a) transfer motion involving those parties in the absence of any forum-selection clauses.[8] *See Jumara*, 55

---

[8] At this step, assuming that the court intends to handle the § 1404(a) transfer issues first, the court should suspend concerns about other threshold issues such as subject-matter jurisdiction, personal jurisdiction, improper venue, or

F.3d at 879-80. This step, like the first, tracks the Fifth Circuit's approach: courts at Step Two should consider the private and public interests "of the parties who have *not* signed a forum-selection agreement." *Rolls Royce*, 775 F.3d at 681. If, at this juncture, the Step One and Step Two analyses point to the same forum, then the court should allow the case to proceed in that forum, whether by transfer or by retaining jurisdiction over the entire case, and the transfer inquiry ends there.

Step Three: Threshold Issues Related to Severance. Third, if the Step One and Step Two analyses point different ways, then the court considers severance. *See* Fed. R. Civ. P. 21. In some cases, severance clearly will be warranted to preserve federal diversity jurisdiction; to cure personal jurisdiction, venue, or joinder defects; or to allow for subsequent impleader under Federal Rule of Civil Procedure 14.[9] In such cases, the court should sever and transfer claims

---

misjoinder, as it has discretion to address convenience-based venue issues first under *Sinochem International Co. v. Malaysia International Shipping Corp.*, 549 U.S. 422, 425, 432 (2007). Under our four-step framework, any other threshold issues are reserved for Steps Three and Four of the transfer inquiry.

[9] *See Grupo Dataflux v. Atlas Global Grp., L.P.*, 541 U.S. 567, 572-73 (2004) (diversity jurisdiction); *DirecTV, Inc. v. Leto*, 467 F.3d 842, 844-45 (3d Cir. 2006) (joinder); *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1544-45 (10th Cir. 1996) (personal jurisdiction); *Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 296

19

as appropriate to remedy jurisdictional and procedural defects. If only one severance and transfer outcome satisfies the constraints identified at this step, then the court adopts that outcome and the transfer inquiry ends. But if more than one outcome satisfies the threshold severance constraints, then the court continues to Step Four.

In other cases, severance is clearly disallowed, such as when a party is indispensable under Federal Rule of Civil Procedure 19(b). *See Grupo Dataflux v. Atlas Global Grp., L.P.*, 541 U.S. 567, 572-73 (2004); *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 421-22 (3d Cir. 2010). In these cases, the court cannot sever, *see Publicker Indus., Inc. v. Roman Ceramics Corp.*, 603 F.2d 1065, 1069 (3d Cir. 1979), and the case must continue with all parties present in a forum where jurisdiction and venue are proper as to the indispensable party, which could be either the originating district court or the court to which transfer is sought. If jurisdiction and venue are proper as to the indispensable party in only one of those courts, then the transfer inquiry ends there and the case must continue in that court. If, however, jurisdiction and venue are proper as to the indispensable party in both the originating court and the proposed transferee court, then, in deciding where the whole case should proceed, the court proceeds to Step Four.

Likewise, in cases where severance is neither clearly warranted nor clearly disallowed and is therefore committed to the court's discretion (such as when there are no

_____

(3d Cir. 1994) (venue); *Stahl v. Ohio River Co.*, 424 F.2d 52, 55 & n.3 (3d Cir. 1970) (impleader).

20

indispensable parties or defects in jurisdiction, venue, or joinder), the court goes on to select the appropriate fora based on a combination of interests addressed at the next step.

Step Four: Efficiency and Non-Contracting Parties' Private Interests. Fourth, and akin to the final step in the Fifth Circuit's framework, *see Rolls Royce*, 775 F.3d at 681, a district court exercises its discretion (which we will review for abuse of discretion) in choosing the most appropriate course of action, *see DirecTV*, 467 F.3d at 844; *Shutte*, 431 F.2d at 25, but it measures its decision against two key sets of interests. On the one hand, the court considers efficiency interests in avoiding duplicative litigation, *see D'Jamoos v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 111 (3d Cir. 2009), taking into account case management techniques that can reduce inefficiencies accompanying severance, *Rolls Royce*, 775 F.3d at 681, as well as any other public interests that may weigh against enforcing a forum-selection clause, *see Atl. Marine*, 134 S. Ct. at 582; *Jumara*, 55 F.3d at 879-80. On the other hand, the court also considers the non-contracting parties' private interests and any prejudice that a particular transfer decision would cause with respect to those interests. *See Rolls Royce*, 775 F.3d at 681; *DirecTV*, 467 F.3d at 846-47; *Jumara*, 55 F.3d at 879.

In exercising its discretion to determine whether it should retain the case in its entirety, transfer the case in its entirety, or sever certain parties or claims in favor of another forum, the court considers the nature of any interests weighing against enforcement of any forum-selection clause; the relative number of non-contracting parties to contracting parties; and the non-contacting parties' relative resources, keeping in mind any jurisdiction, venue, or joinder defects that the court must resolve. Only if it determines that the

21

strong public interest in upholding the contracting parties' settled expectations is "overwhelmingly" outweighed by the countervailing interests can the court, at this fourth step, decline to enforce a valid forum-selection clause. *Atl. Marine*, 134 S. Ct. at 581, 583.

### 3. Analysis

Applying this framework to the record of this case, we hold that a writ of mandamus is warranted. Although we acknowledge the novelty and difficulty of the task set before the District Court, we conclude that court's transfer decision and its reasoning for the decision misapplied *Atlantic Marine* in ways that constitute clear and indisputable errors. Below, we address those errors and then analyze the appropriate fora using the four-step framework we announce today.

### a. The District Court's Errors

The District Court misapplied *Atlantic Marine* in two ways. First, although the District Court acknowledged *Atlantic Marine*'s applicability to the contracting parties in this case (Howmedica and the Sales Representatives), it did not apply *Atlantic Marine*'s precepts correctly to those parties. Specifically, the District Court bypassed the initial step where a district court "must deem the [contracting parties'] private-interest factors to weigh entirely in favor of the preselected forum." *Atl. Marine*, 134 S. Ct. at 582; *see Howmedica II*, 2016 WL 8677214, at *3-4. And, even when it professed to address only "public-interest considerations," the District Court conflated public interests with private ones by considering the parties' and witnesses' convenience, which are not public interests, but private ones. *See*

22

*Howmedica II*, 2016 WL 8677214, at *3; *cf. Atl. Marine*, 134 S. Ct. at 581 n.6; *Jumara*, 55 F.3d at 879.[10]

Second, the District Court did not acknowledge or address the fact that *Atlantic Marine* applies only to parties who agreed to a forum-selection clause—not, as the District Court's opinion implies, either to the whole case or not at all. *See Howmedica II*, 2016 WL 8677214, at *3-6. The District Court's "all or nothing" approach contravenes *Atlantic Marine*'s language, which specifies that a forum-selection clause "represents the parties' agreement as to the most proper forum" and was "bargained for by the parties." *Atl. Marine*, 134 S. Ct. at 581. In light of how the Supreme Court limited *Atlantic Marine*'s holding to contracting parties, the District Court erred in creating a false dichotomy between, on the one hand, applying *Atlantic Marine* to all parties in the

---

[10] For example, the District Court purported to consider the enforceability of the judgment as a public-interest factor and concluded that that factor favored transfer notwithstanding any forum-selection clauses, reasoning that "it will be easier to obtain judgment over [the defendants] in California because [the majority of the defendants] reside in that state." *Howmedica II*, 2016 WL 8677214, at *3 (brackets omitted). But the public interest in the enforceability of the judgment is not concerned with the *convenience* with which the parties may obtain a judgment; rather, this factor concerns whether a judgment is *capable* of being enforced at all. *See generally, e.g., Bhatnagar v. Surrendra Overseas Ltd.*, 52 F.3d 1220, 1225 n.3 (3d Cir. 1995).

case and, on the other hand, applying it to none. *See Howmedica II*, 2016 WL 8677214, at \*3-6.

Given the District Court's clear and indisputable errors, mandamus is warranted, so we turn next to the scope of that mandamus. While we could remand and direct the District Court to apply the four-step framework we prescribe today, we have discretion to apply it ourselves where no additional record development is needed, the outcome is clear as a matter of law, and our application best serves the interests of judicial efficiency. *See Wallach v. Eaton Corp.*, 837 F.3d 356, 374-75 (3d Cir. 2016). Those criteria are met here, so we proceed to address the question of where the claims in this case should proceed. We conclude that the proper disposition of the defendants' § 1404(a) transfer motions is severance of Howmedica's claims against DePuy and Golden State, transfer of the severed claims to the Northern District of California pursuant to § 1404(a), and denial of the motion to transfer the claims against the Sales Representatives. We reach this conclusion applying today's four-step framework.

## b. The Proper Fora Under the Applied Framework

### i. Step One: Forum-Selection Clauses

At Step One, we presume that valid forum-selection clauses should be enforced against the relevant contracting parties. Given the number of defendants and their different positions in this case, at Step One we address them in two groups.

Freeman, Sarkisian, Smith, and Wyatt.  These Sales Representatives agreed to New Jersey forum-selection clauses, and Howmedica seeks to enforce those clauses, so we presume that Howmedica's claims against these Sales Representatives should be litigated in the District of New Jersey.

DePuy, Golden State, and Nordyke.  None of the other defendants agreed to New Jersey forum-selection clauses, though Nordyke's employment agreement had a Michigan forum-selection clause.  Because neither Nordyke nor Howmedica now seeks to enforce the Michigan forum-selection clause, and because venue objections are waivable, even when premised on a forum-selection clause, *see* 28 U.S.C. § 1406(b); *Auto. Mechs. Local 701 Welfare & Pension Funds v. Vanguard Car Rental USA, Inc.*, 502 F.3d 740, 746 (7th Cir. 2007), we do not consider Michigan as a possible venue for Howmedica's claims against Nordyke. Accordingly, DePuy, Golden State, and Nordyke all are not subject to the presumption that the claims against them should be litigated in a contractually agreed-upon forum.  *Cf. Atlantic Marine*, 134 S. Ct. at 581, 583.

Instead, we consider Howmedica's argument that these three defendants are bound by the other Sales Representatives' New Jersey forum-selection clauses under the "closely related parties" doctrine and that, therefore, we must apply *Atlantic Marine*'s presumption in favor of a New Jersey forum.  *See generally Magi XXI, Inc. v. Stato della Citta del Vaticano*, 714 F.3d 714, 722 & n.8 (2d Cir. 2013).[11]

---

[11] In this case, we analyze the "closely related parties" doctrine as a matter of federal common law, because "federal

25

We have held, however, that a forum-selection clause "can be enforced only by the signator[y] to [the] agreement[]," *Dayhoff, Inc. v. H.J.Heinz Co.*, 86 F.3d 1287, 1293-97 (3d Cir. 1996), which DePuy, Golden State,[12] and Nordyke were not.  There is thus no presumption that Howmedica's claims against these three defendants should be litigated in New

---

law, specifically 28 U.S.C. § 1404(a)" and federal common law interpreting that statute, "governs the District Court's decision whether to give effect to the parties' forum-selection clause and transfer the case." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 32 (1988).

[12] Although the Northern District of California held, in the context of Golden State's suit for a declaratory judgment against Howmedica, that Golden State was closely related to Howmedica's employment agreements with the Sales Representatives, that court's conclusion is not binding here for two reasons.  First, issue preclusion is inapplicable because the Northern District of California stayed Golden State's suit pending our disposition of this one, so the court's holding was not essential to any judgment.  *See B & B Hardware, Inc. v. Hargis Indus., Inc.*, 135 S. Ct. 1293, 1303 (2015); *Golden State Orthopaedics, Inc. v. Howmedica Osteonics Corp.*, No. 14-3073, 2016 WL 4698931, at *1 (N.D. Cal. Sept. 8, 2016).  Second, the Northern District of California based its holding on Ninth Circuit case law we explicitly rejected in *Dayhoff*.  *See Dayhoff*, 86 F.3d at 1296; *cf. Golden State Orthopaedics, Inc. v. Howmedica Osteonics Corp.*, No. 14-3073, 2014 WL 12691050, at *4-5 (N.D. Cal. Oct. 31, 2014).

26

Jersey, and we will proceed to address Howmedica's claims against them at Step Two of the transfer inquiry.[13]

### ii. Step Two: Private and Public Interests Relevant to Non-Contracting Parties

We perform at Step Two an independent § 1404(a) analysis of private and public interests relevant to DePuy,

---

[13] While some courts have held that a non-signatory may enforce or be bound by a forum-selection clause, even those courts do not apply the "closely related parties" doctrine if doing so would have been unforeseeable for the party against whom the clause would be enforced. *See, e.g.*, *Magi XXI*, 714 F.3d at 717-20, 722-24; *Lipcon v. Underwriters at Lloyd's London*, 148 F.3d 1285, 1299 (11th Cir. 1998); *Hugel v. Corp. of Lloyd's*, 999 F.2d 206, 209 (7th Cir. 1993). Hence, Howmedica's "closely related parties" argument would not prevail even under those courts' case law, for DePuy, Golden State, and Nordyke could not have foreseen that the other Sales Representatives' forum-selection clauses could later be enforced against them. That is because there is no evidence that DePuy or Golden State were aware of or participated in the other Sales Representatives' contractual negotiations with Howmedica, Nordyke's employment agreement with Howmedica had its own (different) forum-selection clause, and, even if Nordyke could have known about the forum-selection clauses in the other Sales Representatives' employment agreements, that knowledge would have rendered a New Jersey forum foreseeable only for a dispute over another Sales Representative's conduct, not for a dispute over Nordyke's own conduct.

Golden State, and Nordyke. Here, to the extent the District Court discussed interests relevant to those three defendants, we agree with the District Court's analysis of private and public interests. *See Howmedica II*, 2016 WL 8677214, at *3-6. After all, the claims against these defendants arise from their alleged actions in California; it is far easier for Nordyke, who has fewer financial resources than Howmedica, to litigate in California; surgeons and former Howmedica employees who may serve as witnesses are located in California; and trial would therefore be easier and less expensive in California. *See Jumara*, 55 F.3d at 879-80.

Because our Step Two analysis weighs in favor of transferring Howmedica's claims against DePuy, Golden State, and Nordyke to the Northern District of California, and because that result is in conflict with the Step One presumption that Howmedica's claims against the remaining defendants should proceed in New Jersey, we next assess whether severance is warranted.

### iii. Step Three: Threshold Issues Related to Severance

At Step Three, we consider threshold issues such as the presence of indispensable parties and defects in subject-matter jurisdiction, personal jurisdiction, venue, or joinder, all of which may direct our severance analysis. Here, we must consider two such issues.

First, although Howmedica justified its decision to join Golden State as a defendant by asserting Golden State is a "necessary party," Golden State, in fact, does not meet the relevant criteria under Federal Rule of Civil Procedure 19(b). To be an indispensable party under Federal Rule of Civil

28

Procedure Rule 19(b), a party must also be a "required" party under Rule 19(a). That the parties are allegedly joint tortfeasors or that the judgment might set "a persuasive precedent" against the alleged required party is not sufficient. *Huber v. Taylor*, 532 F.3d 237, 250 (3d Cir. 2008); *see Temple v. Synthes. Corp.*, 498 U.S. 5, 7 (1990); *Lomando v. United States*, 667 F.3d 363, 384 (3d Cir. 2011). Yet that is all we have here: Golden State is no more than an alleged joint tortfeasor, and any judgment without Golden State's presence in this case would relate only to the other defendants, would not have preclusive effect against Golden State, *see B & B Hardware, Inc. v. Hargis Indus., Inc.*, 135 S. Ct. 1293, 1303 (2015), and at most would be "persuasive precedent," *Huber*, 532 F.3d at 250. Golden State, then, is neither a "required" party under Rule 19(a) nor an indispensable party under Rule 19(b), and it is permissible to sever claims against this defendant. *See Grupo Dataflux*, 541 U.S. at 572-73.

Second, New Jersey's lack of personal jurisdiction over Golden State, which Howmedica has never challenged except by means of its unsuccessful "closely related parties" argument, requires dismissal or transfer of at least the claims against Golden State. *See Howmedica I*, 2015 WL 1780941, at *7-8 & n.11. Nothing in the record indicates that Golden State deliberately engaged in "significant activities" within New Jersey or created "continuing obligations" between itself and New Jersey residents, and the absence of those prerequisites means that Golden State lacks the constitutionally required "minimum contacts" sufficient to allow New Jersey to exercise personal jurisdiction. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-76 (1985). Accordingly, the District of New Jersey cannot retain

29

jurisdiction over Howmedica's claims against Golden State, *see* Fed. R. Civ. P. 4(k), and at least those claims should be transferred to the Northern District of California, where personal jurisdiction over Golden State is proper.

The Step Three analysis, in sum, indicates that Howmedica's claims against Golden State may be severed and, indeed, that dismissal or transfer of those claims to another forum is mandatory.

### iv. Step Four: Efficiency and Non-Contracting Parties' Private Interests

To recap, the first three steps of our analysis present us with three options: severance and transfer of only the claims against Golden State; severance and transfer of other claims in the case along with the claims against Golden State; or transfer of the entire case, including the claims against Freeman, Sarkisian, Smith, and Wyatt, who all agreed to New Jersey forum-selection clauses. To select among these options at Step Four, we are guided by considerations of efficiency, the non-contracting parties' private interests, and *Atlantic Marine*'s directive that "courts should not . . . disrupt the parties' settled expectations" embodied in forum-selection clauses except when other factors "overwhelmingly" weigh against enforcing the clauses, 134 S. Ct. at 583.

The interests of efficiency clearly favor the severance and transfer of Howmedica's claims against DePuy along with its claims against Golden State, because Howmedica charges these two corporate defendants with the same wrongdoing—aiding and abetting the breach of the duty of loyalty, tortious interference with contract and with

30

prospective economic advantage, unfair competition, and corporate raiding—and because "the same issues" should be litigated in the same forum, *Sunbelt Corp.*, 5 F.3d at 33-34.[14] And to the extent such severance and transfer to California create a risk of duplicative litigation if the claims against the Sales Representatives are litigated in New Jersey, that risk can be reduced or eliminated with "procedural mechanisms . . . , such as common pre-trial procedures, video depositions, stipulations, etc.," which can "echo those used by judges in cases managed pursuant to multidistrict litigation statutes," and which can encompass joint oral argument and bellwether trials if necessary and appropriate. *Rolls Royce*, 775 F.3d at 681; *see, e.g.*, *Excentus Corp. v. Giant Eagle, Inc.*, 2014 WL 923520, at *10-11 (W.D. Pa. Mar. 10, 2014).[15] Although there may be some overlap in legal issues, we are confident that each court can become "familiar[] . . . with the applicable state law" (turning on the outcome of the courts'

---

[14] For this reason, severance and transfer of only the claims against Golden State would be inefficient and inappropriate. Also inappropriate is severance and transfer of the claims against Nordyke without transferring the claims against the other Sales Representatives, as Howmedica accuses Nordyke of the same misconduct as it does the other Sales Representatives: breach of contract, breach of the duty of loyalty, and unfair competition.

[15] *See generally* Fed. Judicial Ctr., *Manual for Complex Litigation* 227 (2004); Sean J. Griffith & Alexandra D. Lahav, *The Market for Preclusion in Merger Litigation*, 66 Vand. L. Rev. 1053, 1134-35 (2013); Alexandra D. Lahav, *Bellwether Trials*, 76 Geo. Wash. L. Rev. 576, 581 (2008).

choice-of-law analyses and whether they choose to apply the choice-of-law provisions in the Sales Representatives' employment agreements). *Jumara*, 55 F.3d at 879-80. Moreover, notwithstanding Howmedica's purported concerns about "court congestion," the caseloads in both courts are comparable. *Jumara*, 55 F.3d at 879-80.[16]

"The enforceability of the judgment" and the "public policies of the fora," *Jumara*, 55 F.3d at 879, likewise support both courts' jurisdiction, for "it is unlikely that there would be any significant difference in the difficulty of enforcing a judgment rendered by one federal forum or the other," 1 Moore, *supra*, § 7.81[3][b], and both California and New Jersey lack any public policy against enforcing forum-selection clauses, *see Nedlloyd Lines B.V. v. Superior Court*, 834 P.2d 1148, 1150 (Cal. 1992) (en banc); *McMahon v. City of Newark*, 951 A.2d 185, 187, 196-97 (N.J. 2008).[17] To the extent the "local interest in deciding local controversies at home" weighs against retaining in New Jersey any claims about the Sales Representatives, who all

---

[16] *See* Admin. Office of the U.S. Courts, *United States District Courts—National Judicial Caseload Profile* 15, 66 (2016), http://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile1231.2016.pdf.

[17] To be sure, California has a public policy against non-compete agreements. *See Advanced Bionics Corp. v. Medtronic, Inc.*, 59 P.3d 231, 236 (Cal. 2002). But that public policy is distinct from any public policy regarding where a non-compete dispute should be litigated, which California does not have. *See id.* at 237.

live in California and worked for Howmedica in California, *Jumara*, 55 F.3d at 879, California's interest is offset by New Jersey's countervailing interest in deciding claims concerning the employment agreements at issue, which Howmedica, a New Jersey corporation, prepared and executed in New Jersey, *see generally Peregrine Myanmar Ltd. v. Segal*, 89 F.3d 41, 47 (2d Cir. 1996).

The non-contracting parties' private interests also are not unduly prejudiced by severance and transfer of only the claims against the two corporate defendants. Golden State is a California corporation, Howmedica's claims against DePuy and Golden State pertain to these entities' California operations, and, as a matter of law, the two corporate defendants will not be subject to issue preclusion. *See B & B Hardware*, 135 S. Ct. at 1303; *supra* Part II.C.3.b.iii. While retaining the claims against Nordyke in New Jersey cuts against Nordyke's private interests given his relatively meager financial resources, *see supra* Part II.C.3.b.ii, Nordyke himself agreed to a forum-selection clause that designated a similarly inconvenient Michigan forum, and, particularly given that Nordyke is represented by the same counsel as the other Sales Representatives, the minimal additional burden to him of litigating in New Jersey does not "overwhelmingly" outweigh the interests in upholding the other parties' "settled expectations," *Atl. Marine*, 134 S. Ct. at 583, and the efficiency of retaining Howmedica's identical claims against all five Sales Representatives in one court, *see supra* note 12.

## III. Conclusion

The correct outcome of our four-step transfer inquiry in this case is clear, as severance and transfer of only the

claims against DePuy and Golden State satisfies *Atlantic Marine*'s prescription that forum-selection clauses should be enforced "[i]n all but the most unusual cases," *Atl. Marine*, 134 S. Ct. at 583, accounts for private and public interests relevant to non-contracting parties, *see Jumara*, 55 F.3d at 879-80, resolves the personal jurisdiction defect as to Golden State in New Jersey, *see Howmedica I*, 2015 WL 1780941, at *7-8 & n.11, and promotes efficient resolution of Howmedica's claims without unduly prejudicing non-contracting parties' private interests, *see supra* Part II.C.3.b.iv. This outcome is therefore optimal for "the convenience of the parties and witnesses" and "in the interest of justice." 28 U.S.C. § 1404(a). Because the District Court clearly and indisputably erred in transferring this case in its entirety to the Northern District of California, we will issue a writ of mandamus vacating the transfer order and instructing the District Court on remand to sever Howmedica's claims against DePuy and Golden State under Federal Rule of Civil Procedure 21, to transfer those claims to the Northern District of California under 28 U.S.C. § 1404(a), and to retain jurisdiction over Howmedica's claims against the five Sales Representatives.