NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-3028
_____

LIBERTY SURPLUS INSURANCE CORPORATION,
                                    Appellant

v.

AXA INSURANCE COMPANY;
AXA CORPORATE SOLUTIONS ASSURANCE S.A.
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-16-cv-04977)
District Judge:  Hon. J. William Ditter, Jr.
_____

Argued
September 11, 2019

Before:  CHAGARES, JORDAN, and RESTREPO, *Circuit Judges.*

(Filed: October 11, 2019)
_____

Timothy E. Corriston   [ARGUED]
Nicole B. Dory
Connell Foley
56 Livingston Avenue
Roseland, NJ   07068

Patrick J. Hughes
Connell Foley
457 Haddonfield Road
Liberty View Building – Ste. 230
Cherry Hill, NJ   08002
        *Counsel for Appellant*

Gerald A. Dever
Roberta D. Liebenberg
Ria C. Momblanco
Fine Kaplan & Black
One South Broad Street – Ste. 2300
Philadelphia, PA   19107

Michael C. Ledley   [ARGUED]
Wollmuth Maher & Deutsch
500 Fifth Avenue – 12th Fl.
New York, NY  10110
        *Counsel for Appellee AXA Corporate*
        *Solutions Assurance, SA*

_____

OPINION*

_____

JORDAN, *Circuit Judge*.

Liberty Surplus Insurance Corporation ("Liberty") brought an action seeking, *inter alia*, equitable contribution from AXA Corporate Solutions Assurance, S.A. ("AXA CS") and AXA Insurance Company ("AXA US") for insurance claims filed by Ardagh Metal Packaging USA, Inc. ("Ardagh US"), a subsidiary of Ardagh Group, S.A. ("Ardagh Global").  The District Court concluded that the forum selection clause in the AXA CS global insurance policy required that claims regarding the policy be brought in the courts

---

* This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

of Ireland and thus dismissed the claims against AXA CS. The Court authorized immediate appeal of that decision pursuant to Federal Rule of Civil Procedure 54(b). We will affirm the order of dismissal.

## I.  BACKGROUND

AXA CS provides Ardagh Global, a packaging manufacturer, with excess insurance[1] worldwide, pursuant to a Global Master Policy. The Global Master Policy "provides coverage for, among other things, … products liability … excess of any underlying insurance." (App. at 268.) It also insures Ardagh Global and its subsidiaries against a first- or third-party product recall occurring "anywhere in the world[.]" (App. at 89.) The Global Master Policy includes this forum selection and choice of law clause: "In the event of a dispute concerning this Policy it is understood and agreed by both the Insured and the Insurer that the resolution of such dispute shall be governed by the laws of the Republic of Ireland whose courts shall have exclusive jurisdiction[.]" (App. at 65.)

The Global Master Policy also mandates that a "Local Underlying Policy" issued by AXA CS, an authorized third party, or an approved insurer be "maintain[ed] in force" by Ardagh Global or its subsidiaries in certain countries, including the United States. (App. at 108.) Those underlying insurance policies are "incorporated in and form part of" the Global Master Policy. (*Id.*) Pursuant to that mandate, Ardagh US maintained two

---

[1] Excess or secondary insurance is different than primary insurance, absorbing a measure of catastrophic risk beyond that covered by a primary insurer. 15 Steven Plitt et al., Couch on Insurance § 220:32 (3d ed. 2019).

policies with AXA US.  In addition, Ardagh US obtained insurance from Liberty to cover liability stemming from product recalls.

Ardagh US incurred losses related to a product recall of steel tuna fish cans that it manufactured, so it asked for payment from both AXA US and Liberty.  AXA US forwarded the claim to AXA CS.  When AXA US and Liberty each refused to pay the claim, Ardagh US wrote to AXA US, Liberty, and AXA CS to complain.  AXA CS replied by sending four letters to Ardagh US at the latter's offices in Pennsylvania, including a Letter of Comfort stating that, if Liberty paid Ardagh US, "AXA w[ould] not argue that Liberty is prevented solely by reason of that payment … from seeking a contribution from" AXA CS.  (App. at 298.)  Eventually, Liberty paid the claim.

Liberty then filed this action seeking a declaratory judgment that the claim is covered by the AXA CS and AXA US policies; equitable contribution/indemnification from AXA CS and AXA US; and specific performance requiring AXA CS and AXA US to comply with their contractual obligations.  Following the District Court's grant of Liberty's motion for jurisdictional discovery, AXA CS filed a motion to dismiss for lack of personal jurisdiction and to enforce the forum selection clause, which the District Court granted.  The Court determined that it lacked personal jurisdiction over AXA CS. It also concluded that the recovery Liberty sought was based on the Global Master Policy and that the forum selection clause in that contract should govern the case since, "[a]s beneficiary of the global policy, [Liberty], even though a non-signatory, may be bound by the forum selection clause."  (App. at 9.)  Because that clause required that claims against

4

AXA CS be brought in the courts of Ireland, the District Court dismissed Liberty's claims against AXA CS.

Liberty moved for entry of a final judgment pursuant to Federal Rule of Civil Procedure 54(b) in order to appeal AXA CS's dismissal, and its motion was granted.[2] This timely appeal followed.

## II.    DISCUSSION[3]

On appeal, Liberty contends that the District Court had specific personal jurisdiction and that the forum selection clause is unenforceable.  We disagree as to the second point and so we need not reach the first.[4]

There are three elements to consider in determining whether a non-signatory is bound by a forum selection clause.  First, we ask whether the non-signatory is an intended third-party beneficiary of the contract or a closely-related party.  *In re McGraw Hill Glob. Educ. Holdings, LLC*, 909 F.3d 48, 59 (3d Cir. 2018).  Second, we analyze whether enforcement of the forum selection clause was foreseeable to the non-signatory.

---

[2]  Liberty's claims against AXA US remain pending.  They are not at issue in this appeal.

[3]  The District Court had subject matter jurisdiction under 28 U.S.C. § 1332.  We have appellate jurisdiction pursuant to 28 U.S.C. § 1291.  "The interpretation and enforcement of a forum selection clause is a matter of law, and we exercise plenary review over it."  *Salovaara v. Jackson Nat'l Life Ins. Co.*, 246 F.3d 289, 295 (3d Cir. 2001).

[4]  We have "discretion to address convenience-based venue issues[,]" such as forum selection clauses, before reaching other threshold issues.  *In re: Howmedica Osteonics Corp.*, 867 F.3d 390, 404 n.8 (3d Cir. 2017).

*Id.* Third, we determine if "the dispute itself … fall[s] within the scope of the forum selection clause." *Id.*

On appeal, Liberty argues that it is not an intended third-party beneficiary or a closely-related party to the contract; enforcement of the forum selection clause against it was not foreseeable; and its equitable claim does not fall within the scope of the forum selection clause.[5]

Before the District Court, Liberty only argued that its equitable claim did not fall within the scope of the forum selection clause. Accordingly, any other arguments regarding why it should not be bound by the forum selection clause are forfeited. *Cf. Tri-M Grp., LLC v. Sharp*, 638 F.3d 406, 416 (3d Cir. 2011) ("It is axiomatic that arguments asserted for the first time on appeal are deemed to be waived and consequently are not susceptible to review in this Court absent exceptional circumstances." (citation and internal quotation marks omitted)). And that sole argument that it preserved fails.

The forum selection clause governs any "dispute concerning [the Global Master] Policy[.]" (App. at 65.)[6] As the District Court reasoned, "[t]he equitable contribution claim is based, at least in part, upon obligations created by the AXA global policy." (App. at 9.) It is true that Liberty's claim is for contribution, and not subrogation,

---

[5] Liberty's claims for declaratory judgment and specific performance of the AXA Global Policy clearly concern the AXA Global Policy and thus fall within the scope of the forum selection clause, as Liberty rightly conceded at oral argument.

[6] This Court has broadly interpreted "dispute" when considering forum selection clauses. *John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1074 (3d Cir. 1997) (rejecting a narrow interpretation of the term that only covers claims).

wherein Liberty would stand in Ardagh Global's shoes, but that does not change the fact that the equitable contribution claim is one "concerning" the AXA Global Policy. *Cf. Crescent Int'l Inc. v. Avatar Cmtys., Inc.*, 857 F.2d 943, 944 (3d Cir. 1988) ("[P]leading alternate non-contractual theories is not alone enough to avoid a forum selection clause if the claims asserted arise out of the contractual relation and implicate the contract's terms."). Indeed, the claim on its face relies on the terms of that policy. (*See* App. at 38, 39 (stating that the product recall claim "falls within the grants of coverage of the AXA Insurers' Policies, and no exclusions apply to bar coverage").) That the claim seeks equitable relief does not change that fact, nor alter the legal conclusion that flows from it. Accordingly, the District Court did not err in dismissing Liberty's claims against AXA CS.

## III. CONCLUSION

For the foregoing reasons, we will affirm the judgment of the District Court.