NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-2288
_____

MEENAXI ENTERPRISE, INC.,
Appellant

v.

SINGH TRADING CO., INC., doing business Roshni Foods;
PARDEEP SINGH ANEJ; VDYAS LLC; CHARANDEEP SINGH;
BHAVANI FOODS AND VEGETABLES, INC.; MUKUND PATEL;
HOUSE OF SPICES (INDIA), INC.; NEIL SONI; JMR DISTRIBUTORS LLC;
HIRAL JOSHI; HETAL MEHTA; DK GROCERY INC.,
doing business as Apna Bazar Cash & Carry; KHADAG SINGH;
PEEKAY INTERNATIONAL, INC.; BINOTI PARMAR

_____

No. 23-2399
_____

In re: MEENAXI ENTERPRISE, INC.,
Petitioner

_____

On Appeal from the United States District Court
for the District of New Jersey
(No. 2-23-cv-00906)
District Judge: Stanley R. Chesler

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
July 12, 2024

_____

Before: SHWARTZ, PHIPPS, and MONTGOMERY-REEVES, <u>Circuit Judges</u>.

(Filed: July 31, 2024

———————————

OPINION[*]

———————————

SHWARTZ, Circuit Judge.

Meenaxi Enterprises, Inc., appeals an order denying two of its motions for default judgment against alleged infringers of its trademark. Because Meenaxi asserts only that these alleged infringers engaged in the unauthorized sale of goods identical to those bearing Meenaxi's trademark, and made no showing of consumer confusion, it did not provide a basis for the District Court to grant its requested relief, and we will therefore affirm.

I

In 2012, Meenaxi obtained a federally registered trademark for BOURNVITA chocolate milk powder and related goods (the "mark"). As such, no other company could use the mark to sell those goods in the United States. Meenaxi alleges that Defendants— various corporations and their owners or officers—have engaged in the unauthorized import and sale of identical BOURNVITA-branded chocolate milk powder that was manufactured by the Cadbury Company in India. Cadbury owns the mark in India but has no rights to use it in the United States.

Meenaxi filed suit, alleging trademark violations under §§ 32 and 43 of the Lanham Act, 15 U.S.C. §§ 1114, 1125, and New Jersey's unfair competition laws.

———————————

[*] This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Certain Defendants failed to respond to the complaint, and so default was entered against them.[1] Meenaxi then moved for default judgments against those Defendants, seeking, among other things, permanent injunctions to prohibit their use of the mark. The District Court denied the motions as to Defendants Singh, Soni, DK Grocery, and House of Spices. Meenaxi Enter., Inc. v. Singh Trading Co., Civ. No. 23-906, 2023 WL 4103930, at *4 (D.N.J. June 21, 2023), recons. denied, 2023 WL 4362632, at *3 (D.N.J. July 6, 2023). The motions regarding the other Defendants remain pending.

In denying the motions, the District Court concluded that the complaint pleaded only conclusory allegations insufficient to hold Singh and Soni liable. Meenaxi Enter., Inc., 2023 WL 4103930, at *2. As to DK Grocery and House of Spices, the Court determined that "key questions [were] unanswered." Id. Specifically, as to the § 32 claims, the Court held that Meenaxi did not show that the goods DK Grocery and House of Spices sold would not be considered genuine, and thus within the reach of the trademark laws. Id. The Court also opined that (1) this might be a case of gray market goods,[2] where the only allegedly unlawful conduct was the unauthorized location or

---

[1] The Defendants against whom default was entered are DK Grocery Inc. d/b/a Apna Bazar Cash & Carry ("DK Grocery"); Khadag Singh ("Singh"); House of Spices (India), Inc. ("House of Spices"); Neil Soni ("Soni"); Bhavani Foods and Vegetables, Inc. ("Bhavani Foods"); Mukund Patel ("Patel"); Singh Trading Co. ("Singh Trading"); and Pardeep Singh Aneja ("Aneja"). Only the claims involving DK Grocery, Singh, House of Spices, and Soni are before us.

[2] "[T]he gray market [is] a parallel market where authentic products are sold through unauthorized sellers." Meenaxi Enter., Inc., 2023 WL 4103930, at *2 n.1 (internal quotation marks and citation omitted); see also Kirtsaeng v. John Wiley & Sons, Inc., 568 U.S. 519, 567 n.9 (2013) (Ginsburg, J., dissenting) ("The term 'gray market good' refers to a good that is imported outside the distribution channels that have been

3

manner of the sale, but (2) even if it were a gray market goods case, Meenaxi's § 32

claims still fail because they do not satisfy the "material differences test."[3]  Id. at *2-4 &

n.2 (citing Iberia Foods Corp. v. Romeo, 150 F.3d 298, 302-03 (3d Cir. 1998)).  The

Court declined to grant default judgment on the remaining claims under § 43 of the

Lanham Act and state law for similar reasons.  Id. at *4 (noting that the remaining claims

contained the same elements as the § 32 claims).

Meenaxi moved for reconsideration, arguing that its pleadings were sufficient, and

that the District Court applied the wrong precedent, including Iberia Foods.  Meenaxi

Enter., Inc., 2023 WL 4362632, at *1.  The Court denied the motion, reasoning that even

if Iberia Foods did not apply, (1) the plain language of § 32 requires the goods be "likely

to cause confusion, or to cause mistake, or to deceive," id. at *2[4]; (2) such a requirement

---

contractually negotiated by the intellectual property holder." (internal quotation marks
and citation omitted)).

[3] Section 32 of the Lanham Act requires that a mark's owner show that the goods
sold by an alleged infringer are not genuine, and we use the "material differences" test to
determine a product's genuineness in the gray-market context.  See Iberia Foods Corp. v.
Romeo, 150 F.3d 298, 302-03 (3d Cir. 1998) (citations omitted); see also Societe Des
Produits Nestle, S.A. v. Casa Helvetia, Inc., 982 F.2d 633, 641 (1st Cir. 1992)
(concluding that "the existence of any difference between the registrant's product and the
allegedly infringing gray good that consumers would likely consider to be relevant when
purchasing a product"  presumptively satisfies the material differences test and noting
that "[t]here is no mechanical way to determine the point at which a difference becomes
'material'").

[4] Section 32 of the Lanham Act provides, in relevant part,

(1) Any person who shall, without the consent of the registrant—

(a) use in commerce any reproduction, counterfeit, copy, or colorable
imitation of a registered mark in connection with the sale, offering for
sale, distribution, or advertising of any goods or services on or in

4

is not limited to gray market goods, id. at *3; and (3) Meenaxi failed to adequately plead or show consumer confusion, id.  By denying Meenaxi's motions, the Court denied Meenaxi's request for a permanent injunction.

Meenaxi appeals.

II[5]

A

We first address whether we have appellate jurisdiction.  United States Courts of Appeal have jurisdiction over "interlocutory orders . . . refusing . . . injunctions[.]"  28 U.S.C. § 1292(a)(1).[6]  Here, the District Court denied the motions for default judgment,

---

connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or

(b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive,

shall be liable in a civil action by the registrant . . . .

15 U.S.C. § 1114(1).

[5] The District Court had jurisdiction pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338, and 1367.

[6] Under 28 U.S.C. § 1292(a)(1), the right to an interlocutory appeal does not depend on whether the injunction sought was a permanent injunction or a preliminary injunction.  E.E.O.C. v. Kerrville Bus Co., 925 F.2d 129, 131 (5th Cir. 1991); see also TD Bank N.A. v. Hill, 928 F.3d 259, 269 (3d Cir. 2019) ("Our interlocutory jurisdiction under § 1292(a)(1) encompasses matters inextricably linked with the issuance of a permanent injunction." (internal quotation marks and citation omitted)).

which explicitly sought injunctions.[7]  We therefore have jurisdiction to consider this appeal pursuant to § 1292(a)(1).[8]

---

[7] Even where a district court's order does not explicitly deny an injunction, the order has the "practical effect" of denying an injunction sufficient to grant us jurisdiction where the absence of an injunction "might have [] serious, perhaps irreparable, consequence[s]" and the denial of the injunction "can be effectively challenged only by an immediate appeal[.]" Rolo v. Gen. Dev. Corp., 949 F.2d 695, 702-03 (3d Cir. 1991) (internal quotation marks and citations omitted).  Here, the District Court's orders had the "practical effect" of denying injunctive relief, id. at 702, because Meenaxi sought permanent injunctions in its default judgment motions and did not receive them. Moreover, the absence of an injunction in a trademark case can have irreparable consequences if the trademark is infringed.  See S & R Corp. v. Jiffy Lube Int'l, Inc., 968 F.2d 371, 378 (3d Cir. 1992) ("[T]rademark infringement amounts to irreparable injury as a matter of law." (citation omitted)); see also Kos Pharms., Inc. v. Andrx Corp., 369 F.3d 700, 726 n.21 (3d Cir. 2004) ("[L]oss of control over [a] mark is irreparable harm regardless of whether resulting confusion might lead to further injuries.").  Meenaxi contends it will suffer irreparable harm because it has no way of obtaining from Defendants any sales information and thus cannot seek after-the-fact damages.  Cf. Mrs. Fields Franchising, LLC v. MFGPC, 941 F.3d 1221, 1236 (10th Cir. 2019) (reversing the grant of a preliminary injunction because there was "a wealth of actual [sales] data" which would therefore allow for a damages calculation).  Finally, because there are other Defendants against whom Meenaxi's claims are pending, Meenaxi could be prejudiced by waiting for the resolution of the claims against those other Defendants and injured by the instant Defendants' continued sales during that time.

[8] Because we have jurisdiction pursuant to § 1292(a)(1), and thus there is an avenue for relief via appeal, we will deny Meenaxi's petition for a writ of mandamus, In re: Meenaxi Enterprises, Inc., C.A. No. 23-2399.  See In re Howmedica Osteonics Corp., 867 F.3d 390, 401 (3d Cir. 2017) (requiring there be no alternative avenue for relief before a writ of mandamus may issue).

6

B[9]

Meenaxi's complaint fails to allege facts sufficient to establish a violation of § 32

of the Lanham Act. Section 32 requires the plaintiff to show that the defendant (1) used a

"reproduction, counterfeit, copy, or colorable imitation" of a registered mark or its

packaging ("first requirement"); and (2) that its use is "likely to cause confusion, or to

cause mistake, or to deceive" ("second requirement"). 15 U.S.C. § 1114(1). As to the

first requirement, we have held that "a trademark owner attempting to use § 32 to prevent

an infringement must establish that the products sold by the alleged infringer are not

'genuine.'" Iberia Foods, 150 F.3d at 302. This is because § 32

> provide[s] a remedy only to the domestic trademark holder who is injured by
> the distribution of like goods . . . . Trademark law generally does not reach
> the sale of genuine goods bearing a true mark even though such sale is
> without the owner's consent. The terms "copy," "simulate," "counterfeit"
> and "imitate" [in the first requirement] have readily comprehensible ordinary
> meanings. They are used commonly to refer to items that resemble, but are
> not themselves, the original or genuine artifacts.

Weil Ceramics & Glass, Inc. v. Dash, 878 F.2d 659, 671 (3d Cir. 1989) (internal

quotation marks, citations, and emphasis omitted).

---

[9] We review district courts' orders denying motions for default judgment and
reconsideration for abuse of discretion. Jorden v. Nat'l Guard Bureau, 877 F.2d 245,
250-51 (3d Cir. 1989) (default judgment); Max's Seafood Cafe ex rel. Lou-Ann, Inc. v.
Quinteros, 176 F.3d 669, 673 (3d Cir. 1999) (reconsideration). "A district court by
definition abuses its discretion when it makes an error of law." Koon v. United States,
518 U.S. 81, 100 (1996). "[T]o the extent that the denial of reconsideration is predicated
on an issue of law, such an issue is reviewed de novo[.]" Max's Seafood Cafe, 176 F.3d
at 673 (citation and italics omitted).

Here, Meenaxi pleaded that Defendants' BOURNVITA is the "same" and "identical" to Meenaxi's product, App. 35, 55,[10] and, hence there are no material differences between Meenaxi's BOURNVITA products and the foreign goods that Defendants sold in the United States. As a result, those goods are genuine,[11] and accordingly, Meenaxi has failed to satisfy the first requirement. Cf. Weil Ceramics & Glass, Inc., 878 F.2d at 671 ("Trademark law generally does not reach the sale of genuine goods bearing a true mark even though such sale is without the owner's consent." (internal quotation marks, citation, and italics omitted)).[12]

---

[10] See App. 35 (Meenaxi alleging that "Defendants are all selling the same infringing product using the same packaging" as Meenaxi's product); App. 55 (Meenaxi arguing in its default judgment brief that Defendants "are using the identical [] mark in connection with the sale of identical products").

[11] We reach this conclusion because, in addition to Meenaxi conceding that the products are identical, it fails to explain how Defendants came to import and sell the same chocolate milk powder as Meenaxi. Meenaxi does not allege, for instance, that an Indian manufacturer is counterfeiting the products without permission from a trademark holder. To the contrary, Meenaxi concedes that the company manufacturing the product sold by Defendants is doing so legally. Meenaxi also does not allege that quality control procedures make Defendants' imported BOURNVITA inferior. See Iberia Foods, 150 F.3d at 304 (discussing quality control as a material difference).

[12] This appears to be a gray market goods case. See K Mart Corp. v. Cartier, Inc., 486 U.S. 281, 285 (1988). Even if we were to conclude that this was not a gray-market goods case, however, neither § 32 nor our precedent provide trademark protection to identical, non-counterfeit goods. See 15 U.S.C. § 1114(1) (protecting against "reproduction[s], counterfeit[s], cop[ies], or colorable imitation[s]" of trademarks); Iberia Foods, 150 F.3d at 302 (observing that "[t]he scope of [§ 32] is not limited to gray goods cases"); Weil Ceramics & Glass, Inc., 878 F.2d at 671 (discussing § 32 broadly and Congress's statutory intent for the law to reach similar, but not identical, goods); see also Davidoff & CIE, S.A. v. PLD Int'l Corp., 263 F.3d 1297, 1302 n.5 (11th Cir. 2001) ("[Appellants] argue[] that the material difference test only applies to so-called gray-market goods . . . . We reject this argument and join the Third Circuit[.]"). Accordingly, the District Court correctly denied Meenaxi's motion for default judgment.

Even if Meenaxi could satisfy the first requirement, it has failed the satisfy the second requirement, i.e., that the presence of Defendants' product in the market was likely to cause consumer confusion. Meenaxi makes only conclusory allegations of consumer confusion and has adduced no evidence or well-pleaded allegations[13] of confusion of any sort.[14]

For these reasons, the District Court properly denied Meenaxi's motions for default judgment on its trademark claim.[15]

---

[13] Because Meenaxi has failed to adequately allege that the infringing goods are not genuine or otherwise inferior, the only plausible source of consumer confusion would be if consumers do not realize that they are buying "genuine" goods diverted from a foreign market to the United States without Meenaxi's permission. Meenaxi has produced no evidence—and offers no well-pleaded allegations—in support of that theory, if it is cognizable at all, cf. Iberia Foods, 150 F.3d at 306 (no confusion because consumers "g[ot] precisely what they believe[d] that they [we]re purchasing" (citing Weill Ceramics & Glass, Inc., 878 F.2d at 672)).

[14] The absence of any facts concerning confusion also excuses the District Court from not applying the factors set forth in Interpace Corp. v. Lapp, Inc., 721 F.2d 460, 462-63 (3d Cir. 1983) (setting forth factors for determining consumer confusion).

[15] The District Court also correctly denied Meenaxi's motion for default judgment on its claims in Counts Three, Four, and Five. In Count Three, Meenaxi alleges false designation of origin pursuant to § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), which we evaluate using "identical standards" as those we apply to § 32 claims, A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc., 237 F.3d 198, 210 (3d Cir. 2000). Moreover, those claims fail because they require some degree of falsity in the product, which Meenaxi has not alleged.

In Counts Four and Five, Meenaxi alleges unfair competition under New Jersey statutory and common law, respectively, which also contain the same elements as the Lanham Act claims and fail for the reasons set forth herein. See Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc., 42 F.3d 1421, 1433 (3d Cir. 1994) (observing that "unfair competition under § 43(a) is not significantly different from the New Jersey [common] law of unfair competition and [that we] have applied the identical tests to both claims" (internal quotation marks and citation omitted); J & J Snack Foods, Corp. v. Earthgrains Co., 220 F. Supp. 2d 358, 374 (D.N.J. 2002) (noting elements for trademark infringement and unfair competition under the Lanham Act and unfair competition under New Jersey statutory and common law are the same).

9

## III

For the foregoing reasons, we will affirm.[16]

---

[16] This conclusion does not mean that trademark holders are without recourse against unauthorized sellers of their products. Rather, it means only that the remedy in such scenarios "is not properly found in" § 32. <u>Weil Ceramics & Glass, Inc.</u>, 878 F.2d at 672; <u>see also</u> <u>Iberia Foods</u>, 150 F.3d at 303-04 (concluding that where goods are "genuine," that "does not mean that the trademark owner suffers no economic harm from the alleged infringer's sales, but it does mean that § 32 . . . does not offer a remedy to the trademark owner").